[L. A. No. 1370. Department Two.—July 29, 1905.]

P. C. HIGGINS, Respondent, v. CALIFORNIA PETRO-
LEUM AND ASPHALT COMPANY, ALCATRAZ
ASPHALT COMPANY, and ALCATRAZ COMPANY,
Appellants.

ASPHALT MINES—SEVERAL OWNERSHIP—JOINT LEASE TO CORPORATION
—ROYALTY—CONVEYANCE IN SEVERALTY TO LESSEE BY ONE LESSOR
—RIGHTS OF REMAINING LESSOR.—Where two owners in severalty
of adjoining tracts containing asphalt mines leased the same jointly
to a corporation upon a joint reservation of royalty, in the absence
of an agreement to the contrary the lease is to be regarded as if
made by tenants in common sharing the royalty equally; and a
conveyance to the corporation lessee in severalty by the owner
of one of the tracts, though extinguishing the royalty *pro tanto*,
cannot affect the rights of the remaining lessor to recover one half
the royalty upon all asphalt mined upon either tract, including the
tract conveyed by the corporation lessee or others acting under
its authority.

ID.—TRANSFER OF TITLE TO OTHER CORPORATION—SUBSTANTIAL IDENTITY
—INTENT TO EVADE ROYALTY—JOINT LIABILITY.—Where the lessee
corporation, with the intent to evade royalty under the lease,
conveyed title to a second corporation, which conveyed it to a third
corporation, each of which had substantial identity, having been
formed by the same persons, and having their offices together,
with substantially the same officers, and organized for substantially
the same purposes, and it appeared that the operations of each
succeeding corporation upon the land conveyed were in reality
conducted under the authority of the lessee and the preceding
corporation, all of such corporations are jointly liable for royalty
to the remaining lessor for all asphalt mined upon the tract so
conveyed.

ID.—CONSTRUCTIVE FRAUD.—Without regard to actual fraud in the
formation of each of the succeeding corporations and the transfer
of title thereto, such transfer as against the remaining lessor hold-
ing an existing obligation against the lessee corporation is con-
structively fraudulent as matter of law.

APPEAL from a judgment of the Superior Court of Santa
Barbara County. D. K. Trask, Judge presiding.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellants.

W. S. Day, and Orestes Orr, for Respondent.

McFARLAND, J.—Each of the three defendants called
the "California Petroleum and Asphalt Company," the "Al-
catraz Asphalt Company," and the "Alcatraz Company,"
is a corporation; and this action is brought by plaintiff, as
one of the lessors in a certain lease of asphalt mines, to re-
cover from said defendants certain rents, or royalties, re-
served in the lease. The trial court rendered judgment for a
certain sum of money which it found to be due as such royal-
ties, and from the judgment the said defendants appeal,
bringing up rulings and evidence in a bill of exceptions.

Most of the main questions in the case were settled on two
former appeals arising out of this same lease. In one of them
—namely, *Higgins* v. *California Petroleum and Asphalt Co.,*
109 Cal. 304, [41 Pac. 1087],—the present plaintiff, Higgins,
was plaintiff, and the defendant herein first above named,
the California Petroleum and Asphalt Company, was defend-
ant; and in the other case,—namely, *Higgins* v. *California
Petroleum and Asphalt Co. and Alcatraz Asphalt Co.,* 122
Cal. 373, [55 Pac. 155],—Higgins was plaintiff, and the two
corporations first named in the complaint herein—to wit, the
California Petroleum and Asphalt Company and the Alcatraz
Asphalt Company—were defendants. In those two cases
many of the facts pertinent to the present case are stated, and
also the principles of law involved; and this present opinion
will consist largely of references to those cases and quotations
from the opinions therein.

On June 4, 1887, the plaintiff herein, Higgins, and Mary
A. Ashley were each the owner in severalty of a tract of
land, each tract lying alongside of and adjoining the other.
Running horizontally and continuously through both of these
tracts there was a deposit of bituminous rock. On said June
4, 1887, the plaintiff herein and said Ashley jointly executed
a written lease to one Joseph Scheerer for the term of twenty
years of all the bituminous rock lying in said two tracts of
land; and the lessee covenanted, among other things, to pay
to the lessors on the first day of every month during the term
"the sum of fifty cents per ton for each and every gross ton
of bituminous rock and liquid asphaltum which he may have
mined, taken or removed from said premises during the
calendar month then next preceding." In December, 1891,
the defendant and appellant herein, the California Petroleum

and Asphaltum Company (hereinafter called, for brevity, the C. P. and A. Co.), became the sole owner of said lease by assignment; and in June, 1902, the said Mrs. Ashley conveyed to said C. P. and A. Co. all that part of the land described in the lease which she severally owned. For several months after said conveyance by Mrs. Ashley the C. P. and A. Co. paid to the plaintiff herein one half of the stipulated rent or royalty (twenty-five cents per ton), Mrs. Ashley treating her interest in the lease as extinguished or merged in the said deed of her land. But differences arose between plaintiff herein and the C. P. and A. Co., and the latter, after April 1, 1893, refused to make further payments of royalty or rent. Thereupon the plaintiff herein, Higgins, commenced the action of *Higgins* v. *California Petroleum and Asphalt Co.*, which was reported in 109 Cal., as above stated. The object of that action was to recover one thousand dollars unpaid royalty on four thousand tons of rock at twenty-five cents per ton, alleged to have been mined from the deposit during the months of April, May, June, and July, 1893. The court found that the royalties of the defendant amounted to $671.25, and rendered judgment for plaintiff for that amount. The C. P. and A. Co. appealed, and the judgment and order denying defendant's motion for a new trial were by this court affirmed. (109 Cal. 304, [41 Pac. 1087].) In that case this court declares that the lease, although made jointly by different owners of contiguous properties, was a valid lease. The court said, through its commissioner, as follows: "Had the lessors in this case been tenants in common of the demised premises, the effects of a conveyance by Ashley of her reversionary estate therein to the lessee would have been to merge her interest in the leasehold term in the reversion, and to extinguish *pro tanto* the covenant of the lessee to pay rent; yet, thereafter, Higgins would have been entitled to receive from the lessee the same portion of rent as before such conveyance [citing authorities]; and I perceive no reason why the effects of Ashley's conveyance of her separate part of the demised premises, of which she was sole owner, should not be substantially the same as they would have been if the lessors had been tenants in common of every part of such premises; the only possible difference being in the mode of apportioning the rent. Had they been tenants in common, Higgins would still be entitled to a

part of the rent proportionate to his undivided portion of the demised premises, but as they are not tenants in common he is entitled, in the absence of an express or presumed agreement to the contrary, to a portion of the royalty proportionate to the comparative value of his distinct part of the demised premises; and in this case the terms of the lease warrant the presumption that each lessor was to receive one half of the royalty, and such presumption is in perfect accord with the practical construction of the lease by the parties thereto, up to April, 1893.

"The fact that, prior to the commencement of this action, the lessee had elected to mine only in that part of the 'deposit' lying within the Ashley tract detracts nothing from the right of Higgins to demand his proper share of the royalty, nor from the obligation of defendant to pay it. The royalty of fifty cents on each ton of rock mined was, by the terms of the lease, to be paid to the lessors, not to the individual lessor from whose land the rock may have been mined. The lease does not restrict the mining to any particular part of the deposit at any time. The lessee has had the right, at all times since the execution of the lease, to mine any part of the deposit, and will continue to have such right until the expiration of the term of twenty years, only about five years of which had elapsed when this action was commenced, and more that one half of the term is still in the future, during which defendant is at liberty to mine exclusively in that part of the deposit lying within the Higgins tract, and may completely exhaust it. The royalty per ton of rock mined is but a mode of estimating the rent to be paid for the right to occupy exclusively the whole premises demised, and to mine any part or all parts thereof at any time during the term, at the election of the lessee."

After the decision of the case last above referred to, the C. P. and A. Co. conveyed the land which had been conveyed to it by Mrs. Ashley to a new corporation called the Alcatraz Asphalt Company, but did not assign to the latter the said lease. After this, rock was taken out of the deposit as before, and apparently under the same management—the rock, however, being taken out only from that part of the leased land which had been owned by Mrs. Ashley and conveyed by her to the C. P. and A. Co. The new corporation claimed that *it*

was taking out the rock, and that, as it was not an assignee of the lease, it was not liable to Higgins for any part of the royalty, and refused to pay him any royalty or rent. Thereupon Higgins brought another action to recover from the two companies for royalties due, and recovered judgment; and from this judgment both companies appealed. The appeal in that case is the one reported in 122 Cal., above referred to. The court in that case affirmed the judgment upon the ground that the two comporations were substantially the same, and that the lease could not be avoided by the scheme of a new corporation organized by the incorporators of the old one.

The court said: "But the court below found in substance that the California Petroleum and Asphalt Company and the Alcatraz Asphalt Company (its alleged grantee) are identical, and that the mining operations conducted by the latter company on this land were in reality conducted by the former company. On this ground, the respondent contends that both companies are liable for the royalties in question.

"We think that there was evidence to sustain this finding. It shows that the new company was substantially a reorganization of the old one. In the old company there was only one real stockholder, and all of the stock issued by the new company was issued to him, the sole consideration being a debt which the old company owed him. It is true that shortly afterward he transferred some of his stock to some Eastern capitalists, and had this in view when the new company was formed. But we cannot agree with appellant that this fact affects the case." And the court further said: "The evidence, moreover, strongly suggests, if it does not establish, that the main, and perhaps the sole, purpose of this organization was to evade the obligations of the lease. While transferring to the new company its land and all of the business and assets, it retained the lease, which could be of no avail in its hands. It is a legitimate inference that this was done purposely, and, if so, the only possible object would be to prevent Higgins from collecting royalties. The old company was to continue to be the lessee, but was to do no mining; while it was to permit the new company, its *alter ego*, to mine without any responsibility therefor. We therefore think that the court below was justified in holding that the new

company was only the old one under another name; and that being so, it is plain that their responsibility to Higgins was not impaired by this merely nominal transfer. [Citing cases.] It is true that the court did not find that there was any actual fraud in the transaction; but we think that such a transfer as against the holder of an existing obligation is constructively fraudulent as a matter of law.''

After the latter decision, a third corporation was formed under the laws of West Virginia,—to wit, the defendant herein, the Alcatraz Company; and to this third corporation the said land formerly owned by Mrs. Ashley was conveyed by the second-named corporation and defendant the Alcatraz Asphalt Company. After this, rock was taken out as before, and this action is brought to recover royalties therefor. The court found that a certain number of tons of rock were taken out, and that twenty-five cents per ton amounted to a certain sum, for which judgment was rendered for plaintiff. The findings as to the amount of rock taken out and not paid for, and the amount due for the royalties, are supported by the evidence, and, indeed, are not assailed. The contention is,— substantially as in the former cases,—that the defendants are not liable because the last-named corporation conducted the business, and not being bound by the lease, etc., is not under any obligation to pay royalties to the lessor, Higgins.

However, we take the decisions of this court in the two cases above referred to as declaring the law applicable to those two cases; and we cannot see any substantial difference between the second of those cases and the case at bar. In the present case the court found that the three corporations defendant are really the same; that the Alcatraz Asphalt Company was organized by the officers and stockholders of the C. P. and A. Co., and the Alcatraz Company was organized by the stockholders of the Alcatraz Asphalt Company; that all three corporations ''had their offices together in the same room, had practically the same officers and were organized by the same persons and for substantially the same purposes.'' And it further found ''that the operations conducted on the leased premises during the time covered by the amended complaint in this action, under the name of the Alcatraz Company, were in reality conducted by or under the authority of the Alcatraz Asphalt Company and the California Petroleum and

Asphalt Company.'' Appellants contend that these findings are not warranted by the evidence; but we think that they are. The evidence in the case at bar as clearly shows the relation as found by the court of the third corporation to the two former ones as the evidence in the case reported in 122 Cal. shows the relation of the second corporation, the Alcatraz Asphalt Company, to the first corporation, the C. P. and A. Co. The fact that when the Alcatraz Company was incorporated the intention of the incorporators was to take in certain Englishmen as stockholders makes no difference. A similar fact existed when the second corporation, the Alcatraz Asphalt Company, was organized; and on that subject this court said: ''It is true that shortly after he [the main stockholder in the C. P. and A. Co.] transferred some of his stock to some Eastern capitalists, *and had this in view when the new corporation was formed.* But we cannot agree with appellants that this fact affects the case.'' And the point here again made that the rock was taken only from that part of the leased premises which belonged originally to Mrs. Ashley, is fully answered by what this court said in the case in 109 Cal. as above quoted. And the point that the articles of incorporation of the Alcatraz Company designated various kinds of business in which it might engage, is of no consequence; the articles of incorporation of the other two corporations were of this same general character, and embraced various kinds of business. We are satisfied that the points here made for a reversal are covered, substantially, by the two former decisions against the contentions of the appellants.

The judgment appealed from is affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.