[Civ. No. 2991. First Appellate District, Division One—October 18, 1919.]

## ELGIN R. SHEPARD, Appellant, v. LAURA S. HUNT, Respondent.

[1] PROMISSORY NOTE—CONSIDERATION—EVIDENCE.—In this action to recover on a promissory note, which the plaintiff claimed was indorsed and delivered to him prior to maturity, in due course of trade and for a valuable consideration, the evidence was sufficient to sustain the finding of the trial court that there was no consideration for the execution of the note.

[2] ID.—INTENT OF PARTIES—CONTEMPORANEOUS CONTRACT.—Where a promissory note is given as part payment for a contract, found to be without value, not only is it necessary for the court to look to the provisions of the contract other than the provision containing the recital as to the consideration therefor in order to ascertain the true intent of the parties as expressed in the terms of their contract, but it is proper to look beyond the instrument itself in order to determine the real consideration for the payment made by the defendant, even though a consideration different than that stated in the written agreement might be discovered.

[3] ID.—PURCHASE IN GOOD FAITH—EVIDENCE—JURISDICTION OF APPELLATE COURT.—In this action to recover on a promissory note which the plaintiff claimed was indorsed and delivered to him prior to maturity, in due course of trade and for a valuable consideration, the findings of the trial court to the effect that the plaintiff did not purchase the note sued upon in good faith and in the ordinary course of business find ample support in the evidence. It is not for the appellate court to determine where the preponderance of the proof is; it need look no further into the record than to discover evidence of a substantial nature which, to a rational mind, may be deemed to support the findings in the behalf stated.

[4] ID.—CREDIBILITY OF WITNESSES—PROVINCE OF TRIAL COURT—CONSIDERATION OF INDIRECT EVIDENCE.—In such action the trial court

was the exclusive judge of the credibility of the witnesses at the trial of the action, and while the plaintiff disclaimed any knowledge impeaching the integrity of the note in suit at the time it was indorsed and delivered to him, and his testimony was corroborated by the indorser of the note, the court was not bound, under the circumstances shown by the evidence, to accept as true the testimony of the plaintiff merely because it was direct and was not directly contradicted, but was duty-bound to consider both the direct and indirect evidence bearing upon the nature of the transfer and what was in the plaintiff's mind at the time.

[5] ID.—PRIMA FACIE CASE—BURDEN OF PROOF.—After the plaintiff in such action had established a *prima facie* case, the burden was cast upon the defendant to show that the note in suit was not founded upon a sufficient consideration. Such proof having been adduced by the defendant, the burden of showing that he was an innocent holder passed to the plaintiff.

[6] ID.—INNOCENT HOLDER—EVIDENCE.—The indorsee of a promissory note may show that he is an innocent holder by proof that he purchased the note before maturity for value and in the usual course of business, unless the evidence shows that the note was taken under circumstances creating the presumption that he knew or should have known the facts impeaching its validity.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lester T. Price, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Fred M. Arnoldy for Appellant.

C. F. Holland and Charles E. Dow for Respondent.

BARDIN, J., *pro tem.*—Plaintiff sued to recover on a promissory note executed by Laura S. Hunt, in the state of Minnesota, on June 3, 1913, for $2,583, payable to Sereen L. Webb, on or before one year after date, and which plaintiff claims was indorsed and delivered to him prior to maturity, in due course of trade and for a valuable consideration.

The action was dismissed as to Sereen L. Webb. The judgment was against the plaintiff, from which he prosecutes this appeal.

Responsive to the issues raised by the answer of defendant Hunt, hereinafter referred to as the defendant, the court

found, among other facts, that on or about March 21, 1914, Sereen L. Webb, the payee named in the note, indorsed and delivered said note to plaintiff and that said plaintiff gave for said note the sum of fifty dollars in money, and his own promissory note in the principal sum of two thousand five hundred dollars, payable one year after date to Sereen L. Webb, without interest; that no part of the principal or interest of the note sued upon has been paid; that said note was given in payment of a certain written contract, presently to be referred to, entered into between defendant and Domestic Utilities Manufacturing Company, a corporation, of which Sereen L. Webb was an agent, which contract was of no value whatever, and that there was no consideration for said note. The court also found that the plaintiff did not purchase said note in ordinary course of business, nor in good faith; that on or about June 3, 1914, Sereen L. Webb waived presentment, demand, and notice of protest of said note, at which time plaintiff knew that said note had been made without consideration and that defendant, prior to the maturity of said note, notified plaintiff that said note was without consideration and void and that she would not pay the same; and that said plaintiff had at said time paid but fifty dollars in money for said note, and nothing on his own promissory note payable to Sereen L. Webb.

The principal grounds urged for the reversal of the judgment, and the only ones meriting discussion, are these: That the evidence does not sustain the findings of the court (1) that there was no consideration for the note sued upon; and (2) that plaintiff did not purchase the note in the ordinary course of business and in good faith.

[1] Directing our attention to the evidence adduced at the trial on the question of the alleged lack of consideration for the execution of the note sued upon, we believe that there is sufficient evidence to sustain the finding of the court on that subject. The execution of the note grew out of a transaction wherein Sereen L. Webb, as the agent of Domestic Utilities Company, for the consideration of five thousand dollars, sold to defendant 1,667 clothes-washers (subsequently delivered), together with certain so-called rights relating to prospective sales of additional washers and of the prospective sales also of other like contracts

when and if willing purchasers might be found, and which sales of clothes-washers and contracts would, if consummated, yield remunerative return in commissions and profits to the defendant.

At the time the contract was entered into Sereen L. Webb delivered to the defendant a receipt in the words and figures following:

"Minneapolis, Minnesota.
"June 3rd, 1913.

"Received of Mrs. Laura S. Hunt five hundred dollars cash on account of contract of Domestic Utilities Company, same to be used on account of 1667 washers, also note for $1167 for same purpose, also note for $2583, also note for seven hundred fifty ($750) dollars in all, making $5000.00 for said contract.

"(Signed) SEREEN L. WEBB."

The defendant claimed below, and she now claims, that the note sued upon was intended as payment for a contract which proved to be valueless, for reasons existing at the time the agreement was entered into, and also because of conditions that arose after that time. It is contended in plaintiff's behalf that the defendant is precluded from making any inquiry as to what the note sued upon was in fact given for, because of a recital in the contract between the defendant and the Domestic Utilities Manufacturing Company as follows:

"Now, therefore, to whom it may concern, be it known that for and in consideration of five thousand dollars ($5,000) this day paid to the 'Company,' the receipt of which is hereby acknowledged, the said 'company' has sold unto the 'Agent' 1667 Vacuum Clothes Washers."

Perusal of the entire contract discloses that it was not intended that the five thousand dollar payment referred to should be limited to the purchase price of 1,667 vacuum clothes-washers. On the contrary, it very plainly appears that defendant was purchasing certain presumed rights and privileges separate and distinct from and beyond the 1,667 washers, and which she was led to believe might prove to be very valuable. These rights, in part, consisted of the power conferred upon the defendant to reserve territory in which to exploit the wares of the company, and to sell such

wares in unreserved territory; the authority to appoint sub-agents, the right to sell wholesale lots of washers under prescribed conditions; and also the right to sell washers in lots of 1,667, and rights and privileges identical in terms with those sold to the defendant.

[2] Not only was it necessary for the trial court to look to the other provisions of the contract in order to ascertain the true intent of the parties as expressed in the terms of their contract, but it was proper to look beyond the instrument itself in order to determine the real consideration for the payment made by the defendant (Code Civ. Proc., sec. 1962, subd. 2; *Field* v. *Austin,* 131 Cal. 379, [63 Pac. 692]), even though a consideration different than that stated in the written agreement might thereby be discovered. And for the same reason it was proper to determine the consideration paid for the 1,667 washers, found by the court to be $1,667, and represented by five hundred dollars in cash and a note for $1,167. It follows, then, that the promissory note sued upon was given as part payment for a contract which the court found to be without value, and the evidence supports such finding.

There was testimony to the effect that it was impossible to effect sales of the washers under the terms prescribed in the agreement. Also the company engaged in the manufacture of these goods and their sale under the unusual plan shown by the contract referred to was compelled, for reasons not clearly appearing in the record, to cease to operate under its contract with the defendant, several months before the maturity of the note in suit. Thus the defendant was prevented from reaping any part of the golden harvest purporting to be provided for her in the "contract."

We pass now to the consideration of the question of whether the record discloses sufficient evidence to sustain the finding of the court that the plaintiff did not purchase the note in suit in course of ordinary business or in good faith.

The circumstances surrounding the transfer of the promissory note from Sereen L. Webb to plaintiff, which took place in the state of Minnesota, are substantially as follows: A day or two before March 21, 1914, the plaintiff, while dining at the home of Mrs. Webb in Minneapolis, was requested by his hostess to purchase this note. At that

time he had been acquainted with her for several years. They had formerly been co-workers in attempting the resuscitation of a certain mining company which had met with serious difficulties of a financial nature. The plaintiff at the time in March referred to above was conducting a photographic business in Minneapolis. He testified that he could not recall ever before purchasing a promissory note. At the time referred to he was already indebted to Mrs. Webb in the sum of three thousand dollars for borrowed money evidenced by his promissory note to her dated February 28, 1914. He knew that Mrs. Webb had been interested in the Domestic Utilities Manufacturing Company and had been selling its "contracts" during the summer of 1913. At the time of the indorsement and delivery of the note in suit, he was not acquainted with the defendant but was informed that she was a resident of Los Angeles, California. He made no inquiries concerning defendant's financial standing, contenting himself upon that subject with Mrs. Webb's statement that the note sued upon was good and that she would become an indorser thereon (which in fact she did), so that the plaintiff would not take any risk whatever in the matter.

The plaintiff further testified that he had not the slightest information as to what the note was given for, and made no inquiries in that respect; that Mrs. Webb had stated to him that the reason she requested the plaintiff to purchase the note was that it had been made by a friend who would ask for an extension of time for payment of the note. Plaintiff knew at the time that Mrs. Webb was not desirous of selling the note because of need of money. He testified that he had read law to some extent and knew at the time of transfer "that a negotiable instrument in the hands of an innocent purchaser for value could be enforced, even though in fact not founded upon a consideration, provided the purchaser did not know it."

It may be here added that subsequent to the maturity of the note sued upon, the plaintiff was informed by Mrs. Webb that she had negotiated the note so as to get it into the hands of an innocent purchaser, that a fancied defect in the note might thereby be corrected.

In consideration of the transfer of the note in suit to the plaintiff he paid to Mrs. Webb fifty dollars in cash, apparently belonging to his wife, but furnished to him for the occasion, and handed Mrs. Webb his own unsecured promissory note for two thousand five hundred dollars, payable one year after date without interest.

About the 15th of May, 1914, the plaintiff wrote to defendant that he would expect payment of the $2,583 note when due, to which letter Mrs. Hunt replied in effect that she would not pay the note and that it grew out of a fraudulent transaction. On May 31, 1914, the plaintiff answered defendant's communication, including in his reply the following sentence: "Am also surprised to learn that if you bought into that Domestic Utilities scheme and lost thereby that you should ever complain of any result therefrom for of all the wild-cat schemes I ever investigated that beats them all"; and also the following: "You have no legal defense to your note, which is a simple promissory note, when the same passes into the hands of an innocent purchaser for a valuable consideration."

About June 6, 1914, the plaintiff called upon Mrs. Webb, at which time he claims he learned for the first time the full details of the execution of the note sued upon. There was then exhibited to him a letter previously sent to Mrs. Webb by the defendant, dated March 15, 1914, wherein the defendant disclaimed responsibility under the note sued upon, basing her denial of liability upon grounds which went to the integrity of the note in its inception. Mrs. Webb continued to hold the two thousand five hundred dollar note given her by plaintiff and which was apparently paid on March 15, 1915, by transferring to her certain lots of land. The present action was begun in April, 1915, and at the trial plaintiff's action was dismissed as to Mrs. Webb.

[3] We believe that the foregoing rather extended summarization of the evidence serves to show that the findings of the trial court to the effect that the plaintiff did not purchase the note sued upon in good faith and in the ordinary course of business, finds ample support in the evidence. It is not for us to determine where the preponderance of the proof is; we need not look further into the record than to discover evidence of a substantial nature

which, to a rational mind, may be deemed to support the findings in the behalf stated.

[4] The trial court was the exclusive judge of the credibility of the witnesses at the trial of the action. While the plaintiff disclaimed any knowledge impeaching the integrity of the note in suit at the time it was indorsed and delivered to him, and his testimony was corroborated by the indorser of the note, yet the trial court was under no legal compulsion to accept such testimony. as true and thus to exclude all inferences logically to be drawn from other admitted or proven facts. The question of the good faith of the plaintiff and the nature of the transfer as to whether it was made in usual course of business were questions entirely within the province of the court for determination. We believe we would not be justified in holding, as a matter of law, that the evidence is insufficient to support the particular findings referred to. The court was not bound, under the circumstances shown by the evidence, to accept as true the testimony of the plaintiff merely because it was direct and was not directly contradicted. The trial court was duty-bound to consider both the direct and indirect evidence bearing upon the nature of the transfer and what was in the plaintiff's mind at the time, and we are satisfied that it was not amiss in the discharge of that duty. For us to say that the transactions such as passed between Mrs. Webb and the plaintiff must be accepted as related by the parties principal, because not contradicted by direct evidence, would be to put a premium upon perjury and to take from our trial courts means for the discovery of truth, now regarded as trustworthy and essential.

[5] After the plaintiff had established a *prima facie* case, the burden was cast upon the defendant to show that the note in suit was not founded upon a sufficient consideration. Such proof having been adduced by the defendant, the burden of showing that he was an innocent holder passed to the plaintiff. [6] The California cases bearing upon this particular subject hold that a party situated as was the plaintiff may show that he is an innocent holder by proof that he purchased the note before maturity for value and in the usual course of business, unless the evidence shows that the note was taken under circumstances creating the presumption that he knew or should have known the

facts impeaching its validity. (*Blochman Commercial etc. Bank* v. *Moretti,* 177 Cal. 256, [170 Pac. 419].)

In the case at bar the plaintiff claims that he met the requirements of the law by showing that he had purchased the note before maturity and in the usual course of business, paying an adequate consideration therefor. The issue as to whether he had purchased the note in good faith and in the usual course of business was decided against him, and it is our conclusion that such finding is supported by the evidence.

The claim is made that, because of the state of the pleadings, the court committed error in receiving in evidence the printed reports of certain decisions of the supreme court of the state of Minnesota, in which state it will be recalled that the note in suit and its transfer was made to plaintiff. In view of the fact that it is our belief that the judgment should be affirmed under the laws of either of the states referred to, this objection becomes of no importance.

The judgment is affirmed.

Richards, J., and Waste, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 15, 1919.

All the Justices concurred, except Melvin, J., who was absent.