## CALDWELL v. ROACH, ET AL.
(No. 1730; June 11, 1932; 12 Pac. (2d) 376)

For the defendants and appellants there was a brief by *C. P. Arnold, S. C. Downey, J. D. McGowen* and *Lenoir Bell,* all of Laramie, Wyoming, and oral arguments by *Mr. Arnold* and *Mr. Bell.*

For the plaintiff and respondent there was a brief and oral argument by *C. M. Eby,* of Laramie, Wyoming.

324

BLUME, Justice.

This is a suit by James E. Caldwell on four promissory notes, all dated June 1, 1920, due in one, two, three and four years after date, each of them for the sum of $1000 except the last, which is for the sum of $500. All of them were negotiable, were executed by the defendants H. N. Roach and H. D. Roach, and were endorsed as follows:

"Pay to the order of James A. Caldwell without recourse.

(Signed) Laramie Water Company
by Daniel Buntin, President."

The record, briefly, shows the following: The plaintiff claims that he is a holder of the notes in due course and testified that he bought them about April 13, 1921, before maturity for full value, in good faith, and without any knowledge on his part of any defense which the defendants might have thereto. The amount paid does not appear. The defendants denied that the plaintiff was a holder in due course. In the second defense payment is pleaded, in the third, failure of consideration, and in the fourth, accord and satisfaction. The defendants claim and the evidence shows that the notes were given pursuant to a contract entered into between the defendants and the Laramie Water

Company, whereby the Water Company sold to the defendants certain water rights in Albany County, Wyoming. The contract provided, among other things, that:

"It is a condition of this agreement that the water rights hereby sold shall be attached and become appurtenant to and shall be used only for irrigation and domestic purposes upon the following described lands and no other, to-wit: One hundred (100) acres in the East Half of the Northeast Quarter (E½ of NE¼) of Section Six (6), and in the Southwest diagonal Half of the Northwest Quarter of Section Five (5), in Township Fourteen (14) North, Range Seventy-four (74) West, in Albany County, Wyoming, the exact description of said one hundred acres to be determined within two years from date, and at the time of such determination a new contract is to be executed by the parties hereto, in which the exact description of said 100 acres shall be given, the terms of said new contract to be similar to the terms of this instrument. Provided, that the Company may at its option and discretion, at any time hereafter, dispense with this condition, or may modify the same in such manner as shall not further restrict the right of the water user."

The defendant H. D. Roach testified that the land described in the contract did not belong to him, although he had a leasehold interest therein, along with others, at the time of the execution of the contract; that he wanted the water for the so-called Peters land, which he owned; that before the contract was executed he called the attention of Daniel C. Buntin, manager of the Water Company and acting on its behalf, to these facts, and that he would not sign the papers as they were then drawn; that Buntin, however, did not want to change the description of the land at that time—apparently thinking that Roach did not own the lands to which he wanted the water right attached; that thereupon the clause was added to the effect that a new contract should be drawn within two years, giving the description of the land to which the water right should be attached; and that he signed the papers only after that was

done; that within two years from the date of the contract he saw Daniel C. Buntin, gave him a description of the land to which he wanted the water right attached, and asked him, as well as Tom Buntin, son of Daniel C. Buntin, and Fey, the secretary, for the new contract; that this was never drawn; that it was finally agreed between the parties, apparently after Daniel C. Buntin's death, that the whole transaction should be cancelled and that thereupon he, Roach, delivered his copy of the contract to Tom Buntin. It is undisputed that no new contract was ever entered into, and there is no explanation in the record on the part of the plaintiff why that was never done. Testimony introduced in his behalf, however, was to the effect that Roach never surrendered his copy of the contract as claimed by him, and never made a demand for a new contract; that only about 75 to 80 acres of the Peters land was irrigable; that water was delivered to Roach for several years after entering into the original contract; that he paid the annual maintenance charges thereon till 1924; and that after the transfer of the notes to the plaintiff the defendant H. N. Roach promised a number of times to pay them without any claim whatever that he had any defenses thereto. It appears that Daniel C. Buntin was a son in law of plaintiff, but that he died in 1924 and his testimony, accordingly, was not available in this suit.

The defendants, among other things, sought to show that the plaintiff was in control of the Laramie Water Company and that he was not a holder of the notes in question in due course. Plaintiff, upon his cross-examination, testified that his connection with the water company commenced some time in 1911 or 1912; that he was a director of the company and attended some of the meetings of the board of directors; that he had been in Albany County several times, knew that the business of the Laramie Water Company was to sell and dispose of water rights and sell stock in the company in connection therewith, but denied any specific knowledge

of the terms upon which these sales were made; that he made it his business to know as much about the Laramie Water Company as he cared to and no more; that he, for years, advanced large amounts of money to the company to keep it afloat and from bankruptcy; that the Laramie Water Company, or its officers, gave him bills receivable to cover the indebtedness which they owed him for moneys which he had advanced; that he knew nothing of the consideration of the Roach notes, except that they were given for property sold by the Water Company; that he did not remember that he had met Roach; that he took no interest in him whatever. The following also appears:

"Q. How many shares of stock in the Laramie Water Company did you own? A. I don't remember now at all. Q. Isn't it a fact that you owned all of them with exception of four shares that were in the hands of other directors? A. I don't know that to be a fact. The books will show. * * * I relied upon the men in charge of it (the Laramie Water Company), their reports, and their conduct of it, their information and their guidance in the matter. Q. But you made no examination of the records yourself? A. I had bookkeepers and officers in there. * * * We had honest, capable men in charge of the business, and I relied implicitly upon them and took their statements, as my guide, of the conduct of the business. Q. You did have some connection with bills receivable? A. Yes sir, I had connection with it; a good many of them came into my hands for moneys that I had furnished the company to keep it afloat. * * * They told me there was a heap of those (debts) and asked me to furnish a heap of money, which I did. They were very diligent about that and I knew a great deal about that."

In a former deposition, excluded by the court, plaintiff had testified, among other things, that he had correspondence with Fey, the secretary of the company; that he, plaintiff, was a director of the company and attended several meetings of the board, and that he was a large creditor and a large stockholder of the Laramie Water Company.

Some of the minutes of meetings of the Laramie Water Company were introduced in evidence. It was shown thereby that the plaintiff was never a director of the company. They indicate that there were two classes of directors, Class A directors and Class B directors; that the Company had nine directors, five to be elected by the owners of Class A stock and four by the owners of Class B stock. The minutes of a meeting in 1917 show that 5993 Class A shares out of a total of 5998 shares were represented by Daniel C. Buntin, proxy for the Lake Hattie Reservoir and Irrigation Company, a predecessor in interest of the Laramie Water Company; that the remaining five shares were represented by Daniel C. Buntin and four other persons; that Class B shares were not represented at that meeting, and that only five directors were elected at that time. The minutes of a meeting held in 1924 show that plaintiff was elected a director; that at that time James E. Caldwell was the owner of 5995 out of a total of 5999 Class A stock; that Class B stock, consisting of 6000 shares, was represented mainly by Elsie C. Buntin, daughter of the plaintiff and former wife of Daniel C. Buntin, deceased. The evidence shows that after this meeting plaintiff was elected president of the company; that in 1926 all the rights and assets of the Laramie Water Company were, through plaintiff's efforts, transferred and sold to another company—the Laramie Rivers Company. It further appears that from 1917 to 1924, no stockholders' meetings of the Laramie Water Company were held; that—if we understand the testimony right—the Laramie Water Company, succeeding to the rights of the Lake Hattie Reservoir and Irrigation Company and another company, at one time had an issue of bonds amounting to one million two hundred and fifty thousand dollars, and that in 1917, the plaintiff and one Webb, an officer of the bank in Tennessee of which the plaintiff was the president, but who seems to have had no other interest in the Laramie Water Company or its affairs, were made trustees

under a trust deed securing the bonds; that at that time there were several creditors benefitted thereby, but no further particulars are shown. Other facts, deemed to be relevant, will be stated hereafter. The case was tried before the court with a jury, and the cause was submitted to the latter on the question of failure of consideration and whether or not plaintiff was a holder in due course. So much of the first defense as denied that the plaintiff was a holder, and the second and fourth defenses, were, without objection, taken away from the jury. The jury returned a verdict in favor of the defendants, and at the same time answered in the negative a special interrogatory whether plaintiff was a director of the Laramie Water Company between June 1st, 1920 and April 13th, 1921. Thereupon the plaintiff filed a motion for a new trial, or, in the alternative, for a judgment notwithstanding the verdict. The court granted the prayer for the alternative above mentioned and entered judgment for the plaintiff for the full amount of the notes, and attorneys' fees and costs. From that judgment the defendants have appealed, and numerous errors are assigned.

1.   We are at the outset confronted with certain questions relating to the sufficiency of the defendants' pleadings herein. It is claimed that the third defense relating to failure of consideration was not sufficient to permit the introduction of evidence that a new contract was to be entered into at the end of two years, so that the water right might be attached to land which the defendant actually owned, and that the Water Company failed to execute such contract. The defendant pleaded in his third defense, among other things, that the notes were given for the purchase price of a water right for lands in Albany County—stated as 80 acres of land; that he did not obtain this water right and "that the consideration for the execution of said notes wholly failed as the said plaintiff then and there, at all times, well knew." It may be conceded that the pleading can hardly be called illuminating to raise the points above

mentioned. This was doubtless partly due to the fact that the defendants did not, according to the testimony, have the contract between the parties in their possession, though it would, perhaps, have been the part of prudence to have amended the answer after they knew of its exact terms. But we cannot say that plaintiff was prejudiced or misled by the failure to do so. He admitted in his reply that the notes were given for a water right—for one hundred acres of land—and claimed that defendant obtained it. And while the court on the direct examination of the defendant struck out all reference to the actual failure of consideration as finally claimed by the defendants, the contract between the original parties was introduced in evidence without objection, and plaintiff himself, on cross-examination of the defendant H. N. Roach, brought out all the actual facts.

It is further claimed that the pleadings of the defendants herein were not sufficient to admit evidence of the fact that the plaintiff was in virtual control of the Laramie Water Company, payee of the notes in question. No authorities in point are cited. It is the theory of counsel for the defendant that by reason of such control, the Water Company was but the agent of the plaintiff; that notice to an agent is notice to the principal, and that the agency need not be pleaded, but that it is sufficient to allege notice to the principal, and they cite 2 C. J. 906, Sec. 612; Bancroft's Code Pleading, Sec. 821; McDermott v. Grimm, 4 Colo. App. 39, 34 Pac. 909; Marshall v. Gillman, 52 Minn. 88, 63 N. W. 811, 812; Cassiday etc. Co. v. Terry, 69 W. Va. 572, 73 S. E. 278, 287. In Bancroft's Code Pleading, supra, it is said:

"An allegation of acts done or knowledge obtained by the principal is fully satisfied by proof of such acts or such knowledge on the part of the agent, and in a complaint it is unnecessary to set forth the agency."

The McDermott case involved a building construction contract. The defendant claimed that the contract had not

been complied with. The defendant claimed that the building was constructed as it was with knowledge of the plaintiff, and that hence there was a waiver as to points in connection with which there was not a strict compliance with the contract. To show such waiver, the defendant offered testimony that plaintiff's agent had knowledge of what was done, and an objection was made on the ground that the agency had not been pleaded. It was held that this was unnecessary. In the Marshall case plaintiff claimed that false representations had been made to him as to the property of the defendant, for which he made an exchange of his own property. The defendant claimed that plaintiff knew of the condition of the property. It was held that "for the purpose of showing notice to the plaintiff as to the condition of the property (of the defendant), notice to any authorized agent might be shown, without the fact of such agency having been pleaded." The West Virginia case involved the question whether a defendant in that case had bought land in good faith and without notice of the rights of plaintiff. The latter, in its petition, charged that the defendant had notice, relying on notice to the defendant's agent without pleading such agency. The court said that "the bill distinctly charges a purchase with notice, and we are aware of no rule requiring specification of the mode or manner of acquisition thereof."

The last cited case seems particularly in point herein, if the Laramie Water Company may be regarded as an agent of the plaintiff, a point which will be discussed later. The claim of counsel for plaintiff that constructive notice is not sufficient, is not pertinent on this phase of the case at least, for the answer charges, or includes, actual notice. The case was tried, partially at least, and was submitted to the jury, on the theory, that, whether or not plaintiff could recover, depended on whether or not he had knowledge of the defenses of the defendant. Even in this court, counsel for the plaintiff merely argues that the allegation of notice was not

sufficient because no facts showing knowledge are stated, relying on 8 C. J. 966, 911; Gee v. Saunders, 66 Tex. 333, 1 S. W. 272; Ramboz v. Stanbury, 13 Cal. App. 649, 110 Pac. 472. In Gee v. Saunders the court held that the defense of failure of land title could not be set up against purchasers of a negotiable instrument, because "the plea did not aver any fact that would charge them with notice." The case does not show what the defendant had pleaded. In Ramboz v. Stansbury, supra, the defendant set up a counterclaim in a case brought by a transferee of a negotiable note. The court in holding evidence of the defense inadmissible, said in part:

"It is not alleged that plaintiff or the bank had notice of the facts set up in the counterclaim, nor are any facts alleged therein showing want of good faith on the part of the bank in the purchase of the note. 'The general rule is that absence of consideration or a failure of consideration is available as a defense in a suit by an assignee of the instrument only by specially pleading the same and showing by additional allegations why the instrument is subject in his hands to the defense, as for instance that the assignee is a holder with notice.' "

This case does not sustain the contention of counsel for the plaintiff, but on the contrary seems to hold that a general allegation of notice is sufficient. In 8 C. J. 915 it is said that "general allegations of knowledge or notice have been held sufficient, such as an averment that plaintiff had due notice of the facts pleaded." None of the authorities cited appear to hold the contrary. Assuming, accordingly, as correct the theory of the parties and of the court adopted in this case—we need not decide as to whether it is or not—it would seem that while the answer may have been subject to a motion for a more specific statement, that it was not fatally defective. And we might add, that plaintiff had full knowledge of the defendant's claim in this connection long before the trial of the case, so that it cannot be said that he was surprised thereby.

2. It is claimed that no failure of consideration was shown herein, but that on the contrary the defendant was, under the written contract introduced in evidence, vested with a water right which he still holds. We think, however, that defendants' testimony was sufficient to submit this question to the jury. The contract provides that the water right should be attached to the lands described, unless that condition was waived. There is no indication that such waiver was made. Clearly, if defendant did not own the land to which, in the absence of a waiver, it was specifically attached, and defendant did not own the land described in the contract, then he received nothing for the notes (except the temporary use of water, as shown by the evidence), unless a new contract was entered into as agreed on between the parties, and that was never done, due, as testified to by the defendant, not to his own fault, but due to the fault and failure of the water company. It is argued that the exact description of the land to be given in the new contract merely refers to the land already described in the contract, and that would, probably, be its ordinary meaning. But the defendant testified that it referred to land owned by him and of entirely different description, and we cannot say that his claim is so entirely unreasonable, or that the written contract is so clear, as to make parol evidence inadmissible to explain it. That there is some basis for defendants' contention is beyond controversy, since there is a specific provision that a new contract should be executed within two years, and that has never been done.

3. We come then to the main question in the case, namely, as to the effect of the testimony tending to show that plaintiff was in control of the Laramie Water Company. Without determining in what cases, if any, a person in that position can be held to be a holder in due course of a note endorsed to him by a corporation in a like situation, we are safe in saying, we think, that the fact of such control is at least a circumstance, and a material and important one, in

determining whether an endorsee in that situation is a holder in due course in a particular case. If the plaintiff and the corporation were in fact one and the same, so that the water company may be considered as but an agent or instrumentality of the plaintiff, then clearly the latter should not be permitted to claim that he could become a holder in due course by purchasing the notes in question, at least if he had knowledge of the facts of failure of consideration. A transfer in that case would seem to be equivalent to a transfer from himself to himself. That the legal entity of a corporation will be disregarded whenever the recognition thereof in a particular case will lead to injustice, has been announced so frequently that it is hardly necessary to cite the authorities. In Cook on Corporations, Sec. 6, it is said:

"A corporation is an entity, an existence, irrespective of the persons who own all its stock. * * * But there are occasions where the courts will ignore the corporate existence and will hold that its acts are the acts of its stockholders and vice versa the same as in a partnership. * * * The New York Court of Appeals has said: 'We have of late refused to be always and utterly trammeled by the logic derived from corporate existence where it only serves to distort or hide the truth.'"

In Thompson on Corporations, Sec. 10, it is said:

"The proposition that a corporation has an existence separate and distinct from its membership has its limitations. It must be noted that this separate existence is for particular purposes. It must also be remembered that there can be no corporate existence without persons to compose it; there can be no association without associates. This separate existence is to a certain extent a legal fiction. Whenever necessary for the interests of the public or for the protection or enforcement of the rights of the membership, courts will disregard this legal fiction and operate upon both the corporation and the persons composing it."

In Bryan v. Banks, 98 Cal. App. 748, 277 Pac. 1075, 1078, it was said:

"While it is the general rule that a corporation is an entity separate and distinct from its stockholders, it is equally well settled that both law and equity will, when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice, disregard the distinct existence and treat them as identical. * * * Equity will look through form to substance where corporations are but the mere instrumentalities through which the associates acted."

In Midwest Air etc. v. Finn, 201 Cal. 587, 258 Pac. 382, 386, it was said:

"In proper cases, equity will look behind the corporate entity and consider who are the real and substantial parties in interest, whenever it becomes necessary to promote justice, or obviate inequitable results, and the law will follow equity in this respect."

In People ex rel. v. Telephone Co., 246 Mich. 198, 224 N. W. 438, 440, the court said:

"Where a corporation is so organized and controlled, and its affairs so conducted, as to make it a mere instrumentality or agent or adjunct of another corporation, its separate existence as a distinct corporate entity will be ignored, and the two corporations will be regarded in legal contemplation as one unit. In re Muncie Pulp Co. (C. C. A.) 139 F. 546; Interstate Telegraph Co. v. Baltimore & O. Telegraph Co. (C. C.) 51 F. 49; Wormser on Disregard of the Corp. Fiction, 54. When a corporation exists as a device to evade legal obligations, the courts, without regard to actual fraud, will disregard the entity theory. Higgins v. California Petroleum & Asphalt Co., 147 Cal. 363, 81 Pac. 1070; Brundred v. Rice, 49 Ohio St. 640, 32 N. E. 169, 34 Am. St. Rep. 589; Donovan v. Purtell, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176."

In Advance-Rumley Thresher Co. v. Geyer, 40 N. D. 18, 168 N. W. 731, it appears that implements were sold to the defendant by the Rumley Company, predecessor of plaintiff. The goods were manufactured by the Rumley Company. The Rumley Products Company was its selling agent

and the note in suit was given to it, and endorsed by it to the Rumley Company. It was held that the two companies should be considered the same, and that the endorsee of the note could not become a holder in due course. See also Minifie v. Rowley, 187 Cal. 481, 202 Pac. 673.

It is claimed herein, however, that there was no want of consideration, but, if anything, only a failure of consideration, arising subsequent to the execution of the contract, and subsequent to the time that the notes herein were endorsed to the plaintiff. And the rule is relied on that knowledge by the purchaser of a bill or note of the fact that the consideration therefor was an executory contract does not prevent him from becoming a bona fide holder thereof unless there has been, at the time of the negotiation of the bill or note, a breach of the contract to the knowledge of the purchaser. That is undoubtedly the general rule. 3 A. L. R. 987, note; Brannon Neg. Inst. Law, (5th Ed.) p. 589; 3 R. C. L. 1068. The reason therefor is stated in Todd v. Bank, 182 Iowa 276, 165 N. W. 593, 3 A. L. R. 971 as follows:

"A large proportion of the negotiable paper which finds its way into the banks or markets of the business world has its consideration to a greater or less extent in executory undertakings, and any other rule would be attended with unfortunate results."

And in 3 R. C. L. 1068 it is said that the "presumption of law would be that the (executory) contract would be carried out in good faith, and the consideration performed as stipulated." We have no fault to find with the rule as applied in the ordinary case. But where the reason of the rule fails, the rule itself should fail. In the cases in which it has been applied, it will be found, we think, that the endorsee of the note was a third party, unconnected with the endorser of the note, and hence not in position to carry out the executory contract. If, however, the endorsee, at least one who has knowledge of the facts, is the very party whose

duty it is to see to it that the executory contract is performed, and who can do so, and he fails to do it, an entirely different situation arises, and to apply the rule mentioned in such a case would be clearly a perversion of justice. If, accordingly, sufficient evidence appears in a case to submit to the jury the question that the endorsee of the note knew, or, perhaps, under the circumstances of the case, should have known, of the existence of an executory contract which he himself was in position to carry out, and he fails to do so, then he may well be found not to be a holder in due course. We need not inquire whether he should in that case be held to have notice of an "infirmity" of the instrument, or should be considered as not holding the note in good faith, or both, within the meaning of Section 52 of the Negotiable Instruments Law (Sec. 74-402, Rev. St. Wyo. 1931). It is not altogether clear from the authorities what each of these terms embrace. We cannot conceive that the statute contemplates that a person in that position can be held to be a holder in due course.

We have no authorities, as far as we have been able to find, directly in point. But there are cases which throw at least some light on the question. The general rule as to the executory agreements above mentioned has in some cases been held to be inapplicable. Thus it has been decided that where notes have been given, the payment of which is in effect conditional upon the performance of certain things by the payee, an endorser with notice is not a holder in due course. Sutton v. Beckwith, 68 Mich. 303, 13 A. S. R. 344, 36 N. W. 79; Tice v. Moore, 82 Conn. 244, 73 A. 133, 17 Ann. Cas. 113; Harris v. Nichols, 26 Ga. 413. In 3 R. C. L. 1068 the rule is stated as follows:

"And on the principle that several instruments made at one and the same time, and having relation to the same subject-matter, must be taken to be parts of one transaction, and construed together for the purpose of showing the true contract between the parties, it has been held that an agreement made at the time of the execution of a note, forming

its real consideration, and to be performed before its maturity, is a part of the same contract, and, between the original parties to the note, cannot be enforced until the agreement is performed; and that a purchaser of such note before maturity, and before the time of performance of the agreement, with notice and knowledge of its relation to the note, is bound by it the same as if it were attached to the note or written upon the same piece of paper.''

In Cunningham v. Toy, 97 Ark. 337, 134 S. W. 962, it was held that one who purchases a note with notice that his assignor is under obligation to make title to certain land, when a series of notes for the purchase money is paid, takes subject to such obligation. In Todd v. Bank, supra, it was held that a bank, which, upon purchasing notes given for the purchase price of land, with knowledge that an unencumbered title thereto is to be conveyed by the payee, is not entitled to enforce the notes, if a good title to the land cannot be conveyed when the notes mature, although there had been no breach when the notes were sold to the bank.

In the case at bar a contract was to be executed within two years from the date of the notes conveying to defendant a water right attached to land owned by defendant. Assuming, as it seems we must, that the contract of June, 1920, standing by itself, conveyed substantially nothing to the defendant, if his claim of the non-ownership of the land therein described is correct, the contract still to be executed was the real and substantial consideration for the notes in suit, without which, as defendant testified, he would not have given them. Such contract can hardly be considered a collateral contract within the meaning of at least many of the cases announcing the general rule as to executory agreements, but would seem to be more in the nature of an agreement requiring reciprocal performance upon payment of the notes. In any event the requirement of such reciprocal performance seems to us as urgent as, if not greater than, in cases where the payments to be made are construed as conditional, or in effect conditional, and an endorsee, at

least one with knowledge of the facts, and in position to carry out the endorser's obligation, should have no greater rights than the latter. Such knowledge, if not presumed in a case like that at bar, need not be shown by direct testimony, but may be shown by circumstances. Norristown Penn. Trust Co. v. Middletown, 300 Pa. 522, 150 Atl. 885; Kipp v. Smith, 137 Wis. 234, 118 N. W. 848; Lewis v. Western Stock Remedy Co., (Ia.) 178 N. W. 536 and cases cited. The jury were not bound to accept the denial of knowledge by the plaintiff, if the circumstances shown were such as to indicate the contrary (Shepard v. Hunt, 43 Cal. App. 630, 185 Pac. 677; Arnd v. Aylesworth, 145 Ia. 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638), particularly in view of plaintiff's testimony that, as was but natural, he had forgotten many of the details concerning which he was interrogated, and that he had been in correspondence with the Laramie Water Company who made reports to him of the affairs of the water company.

We must not be understood as casting any reflection upon plaintiff's integrity, but there are certain consequences which the law draws at times from established facts without any reference to any specific intentions of parties in connection therewith. Plaintiff doubtless put a great deal of money in the project handled by the Laramie Water Company, and unfortunately, doubtless, lost a great deal of it, as his testimony seems to indicate, and no moral wrong can be attached to an honest endeavor to make that loss somewhat smaller. But, on the other hand, there can be no reason, if the claim of defendant is true, why he should pay for something which he never received, under circumstances which would make it unjust.

Turning then to the facts in the case before us, the court submitted to the jury the question whether or not the plaintiff was a holder in due course, and instructed them that they might take into consideration in determining that fact the relationship of the plaintiff to the endorser of the notes

in question. Nevertheless, the court subsequently entered a judgment notwithstanding the verdict of the jury, found in favor of the defendant. We are not certain upon what theory that was done. The court may have thought that when the jury found that the plaintiff was not a director of the Laramie Water Company, the plaintiff's relationship to the company was out of the case. We do not, however, see why notice of the defense of the defendants to the notes could not be as readily found from the fact that plaintiff controlled the water company, at least along with others, as from the fact that he was a director. We think the reverse might well be true, in some cases. Or, on the other hand, the court may have entered the judgment on the theory that the evidence submitted in the case by the defendant was not sufficient. But before the court gives a judgment notwithstanding the verdict of a jury, it should take into consideration, we think, not only the evidence submitted, and the inferences rightly drawn therefrom, but also what, if any, evidence has been erroneously excluded or ignored by the court, and if it appears therefrom that the same verdict would then be justified, or if it appears probable from the evidence that defects, if any, can be readily supplied on another trial, then a new trial should be granted rather than a judgment entered notwithstanding the verdict of the jury. See Campbell v. Weller, 25 Wyo. 65, 164 Pac. 881; Delay v. Water Power Co., 129 Minn. 432, 152 N. W. 840.

We need not determine whether the evidence offered and received on the question that the plaintiff was a holder in due course, was of itself sufficient on that point. But we think that this evidence, together with what was erroneously rejected, and what was disregarded by the court, and what can, as the record indicates, be readily supplied on another trial, would make that question fairly one for the jury. We say this upon the theory that there was some evidence from which it might be inferred that the plaintiff controlled the Laramie Water Company and that this company was merely

an instrumentality of the plaintiff. We are not prepared to go as far as the defendants claim that a showing that the plaintiff was merely a large stockholder would be one of the determinative or important facts. Conover v. Hasselman, 199 Iowa 661, 202 N. W. 502; Tarbox v. Gorman, 31 Minn. 62, 16 N. W. 466. There might be cases where that might, possibly, be true, but not ordinarily, for a man might own 49.9% of the stock of a corporation, and yet have no voice whatever in its affairs.

Some important evidence was excluded. Among other things the plaintiff testified on cross-examination that "I had bookkeepers and officers" who looked after his affairs in connection with the Laramie Water Company. The testimony was, on motion, struck out. We think this was error. It was damaging to plaintiff's claim and important. It is claimed that this testimony was not brought out on proper cross-examination. But we think it was, for plaintiff had testified on direct examination to all the facts tending to show that he was a holder in due course. So too, testimony was admissible that some of the directors of the corporation were mere figureheads, and the court in some instances erroneously refused to let the defendant bring out circumstances indicating, along with other evidence, the plaintiff's control above mentioned. For instance, the court refused to let the witness Fey testify as to whether or not the Laramie Company was operated since 1917 as the business enterprise of plaintiff and Daniel C. Buntin, son in law of plaintiff, when an objection was made that "the records show how it was operated, as a corporation." The witness had already previously stated that to be the fact, but that testimony was, on motion, struck out. These actions of the court indicate at least, if nothing more, the erroneous theory upon which it tried the case.

Judging from the refusal of the court to give an instruction on the subject, the court did not consider the evidence that apparently plaintiff made no inquiry as to the defend-

ant's financial standing, and further, that he took the notes in question without recourse. It is undoubtedly the general rule that "an indorsement 'without recourse,' or an expression of the same import, is not of itself sufficient to put a purchaser on inquiry, and to constitute constructive notice to him." 8 C. J. 517, where it is also said that such an endorsement is not out of the usual course of trade. But we think that an endorsement without recourse, together with evidence that the indorsee made no inquiry as to maker's financial ability to pay, is a circumstance that should be taken into consideration. We cannot conceive that a banker, as the plaintiff was, would purchase a note for full value and in good faith, so as to become a holder in due course, without any knowledge whatever of the financial standing of the maker, and at the same time renounce all right of recourse against the endorser. Surely such a transaction is most unusual, and should be a circumstance to be considered in determining whether he became a holder in due course. In Shepard v. Hunt, 43 Cal. App. 630, 185 Pac. 677, the court took into consideration the fact that the endorsee of a note was not, at the time of the endorsement, acquainted with the maker thereof, and that he made no inquiries concerning the latter's financial standing. In Perry Sav. Bank v. Fitzgerald, 160 Iowa 446, 149 N. W. 497, it was held that the question of whether or not the plaintiff was a holder in due course was for the jury, where it was shown that the note, claimed to be usurious, was taken without recourse, that the endorsee took a separate guaranty, and that such endorsee had heard rumors that the payee of the note had made some usurious loans. In Merchant's National Bank v. Branson, 165 N. C. 344, 81 S. E. 410, 414, the facts on the point now being considered were similar to those in the case at bar. The court said in part:

"The bank held a large debt against the Importing Company, and took these collaterals to secure it, and for a large additional loan, as plaintiff would have us believe, and released the payee of the collateral notes from all liability in

them (Rice v. Stearns, 3 Mass. 225, 3 Am. Dec. 129), which, of course, required the bank to rely solely upon the solvency of the makers, and all this was done without the slightest inquiry into their financial ability to pay the notes, or their responsibility therefor. Alone this kind of indorsement does not cloud the note or affect the position of the indorsee as a holder in due course, but it may become evidence, if combined with other suspicious facts. 'Where a party (says the court in Stevenson v. O'Neal, supra (71 Ill. 314), citing Russell v: Hadduck, 3 Gilman (Ill.) 233, 44 Am. Dec. 693) is about to receive a bill or note, if there are any such suspicious circumstances accompanying the transaction, or within the knowledge of the party, as would induce a prudent man to inquire into the title of the holder or the consideration of the paper, he shall be held bound to make such inquiries, or, if he neglects so to do, he shall hold the paper subject to all equities, in other words, he shall act in good faith, and not willfully remain ignorant when it was his duty to inquire into the circumstances, and know the facts.' In our case there were suspicious circumstances, which were properly submitted to the jury upon the question of plaintiff's standing as a bona fide indorsee, and they tended to show that there was notice of the fraud, if not fraudulent collusion between the parties to deprive the payees of their defense to the note.''

The defendants offered as part of the cross-examination of the plaintiff a deposition that had been taken in a former case commenced against the defendants to recover for the notes in suit. Upon motion that deposition was stricken. We find no error in that, because though certain statements therein probably are admissible, upon an independent offer, as statements against interest, it was not offered in the course of proper cross-examination. We might say in that connection that the plaintiff in that deposition also testified to facts making him a holder in due course, and it may be, without expressing a definite opinion, that had the deposition not been stricken, the question might well be raised as to whether or not the defendant would not have been bound by that testimony.

C. E. Fey, secretary of the Laramie Water Company, was called as a witness by the plaintiff, and on his direct examination testified that the notes in question were endorsed to plaintiff by Daniel C. Buntin, president of the water company. On cross-examination he was asked as to his relationship, friendship, etc., toward the plaintiff. Upon motion the answers of the witnesses were stricken out as not cross-examination. These answers were not important, except that the witness stated that the plaintiff and Daniel C. Buntin got control of the water company in 1917. If it were claimed that the signature on the notes were not Buntin's, and that hence plaintiff never became the endorsee of the notes, we can readily see that it would have been important to find out whether Fey's testimony as to Buntin's signature was not given out of friendship for the plaintiff. But no such claim is made, and hence we cannot say that the court erred in its ruling.

We do not think it necessary to consider other assignments of error. Sufficient has been said, we think, to serve as a guide in a retrial of the case. We are asked by counsel for the defendant to reinstate the verdict of the jury. But we do not feel that we are warranted in doing so.

It is accordingly ordered that, on account of the errors herein pointed out, the judgment of the District Court is reversed, and the cause is remanded for a new trial.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.