[S. F. No. 15651.   In Bank.—December 28, 1936.]

KENNETH WATSON, Appellant, v. COMMONWEALTH INSURANCE COMPANY OF NEW YORK (a Corporation) et al., Respondents.

* Hugh Goodfellow, Thomas Ashby, Carl Westerfeld, Hartley F. Peart and A. Dal Thomson for Appellant.

Thornton & Watt, Thornton & Taylor and Thornton, Menzies & Taylor for Respondents.

THOMPSON, J.—This is an action for damages for the conversion of 2,500 shares of corporate stock by the defendant insurance companies. The charges of conversion grow out of an attempt to salvage the corporation of Watson & Taylor, an insurance agency which had acted as general agent for the defendant companies for a period of years. Except for a qualifying share held by each of the three directors, the plaintiff Kenneth Watson, Churchill Taylor and J. E. Barry, the entire stock of the corporation was owned by the former partners, Watson and Taylor, the ownership being evidenced by certificate No. 5 for 4,997 shares, issued to Watson and Taylor and held in escrow ever since the organization of the corporation by direction of the corporation commissioner.

In December of 1930 Watson & Taylor was indebted to the defendant companies in an undetermined sum representing the balance due on back premiums. The insurance companies demanded payment and in January, 1931, threatened suit. Meetings and conferences were had and negotiations begun between Watson, Taylor, A. T. Bailey, manager and vice-president of several of the defendant corporations, and J. C. Griffiths, president of another of the defendant companies, and, at some meetings, Barry, director of and attorney for Watson & Taylor, and Thornton, attorney for defendants were present. Testimony on behalf of the defendants is to the effect that Watson and Taylor undertook to raise the money and individually promised to pay the indebtedness. Watson denies that he personally undertook to raise the money for the discharge of these obligations (later found to be approximately $106,000), but concedes that Taylor gave his individual promise to pay. At a meeting on January 23, 1931, according to the defendants' evidence, the following agreement was reached: Watson and

Taylor were, on their request, given five days' extension of time in which to attempt to raise the money and if they were unsuccessful the defendants were to cancel existing contracts and close the agency. Thornton testified that he was called into this meeting and the situation outlined as stated, in the presence of both Watson and Taylor; that he was instructed to draw up a bill of sale to three of the defendant companies which was signed that evening; that by the bill of sale the assets were assigned to him as trustee at the suggestion of Watson and Taylor instead of to Bailey and Griffiths, as originally planned; that several meetings were had thereafter and, Watson and Taylor reporting that they could not raise the money, the accountants having been called in and it having been discovered that there were other outstanding obligations of Watson & Taylor, including an overdraft at the bank, and that the bonding companies were asking for a receiver, more time was refused and another "agreement and bill of sale" to the remaining defendant companies was executed on March 19, 1931. Thereafter, the defendants attempted to interest various insurance agencies in taking over the firm of Watson & Taylor, but were unable to do so and, finally, about March 31, 1931, Watson and Taylor were told that the only arrangement the defendants had been able to make was to turn over the agency to Richards and Rhorer, former employees of Watson & Taylor, with the understanding that if they paid off the indebtedness the agency was to belong to them. Watson and Taylor were to be allowed a drawing account of $200 a month each, which was in fact paid to them for several months. The existing agency contracts were then canceled by mutual consent (April 7, 1931) and new contracts drawn (dated April 21, 1931) with the agency as then constituted but in the old name of Watson & Taylor. In September, 1931, the corporate name was changed to "Richards & Rhorer", the resolution of amendment having been passed September 2, 1931. The certificate of amendment filed with the Secretary of State recited the ownership of all the stock of Watson & Taylor by Richards, Thornton and Watt, the latter an attorney associated with Thornton and one of the new directors. It is the passage of this resolution to change the name of the corporation to which the plaintiff points as the act of conversion in that it was the exercise of dominion

and control over the 2,500 shares of stock which he contends still belonged to him even though the certificate was in escrow and the stock could not be released without permission of the corporation commissioner.

The documents evidencing the transactions are three. The January 23, 1931, "agreement and bill of sale" was executed by Watson & Taylor by K. Watson and C. Taylor. by Bailey for Commonwealth Insurance Company of New York and Pennsylvania Insurance Company of Philadelphia and by Griffiths for the California Insurance Company of San Francisco. It recited the general agency of Watson & Taylor, its indebtedness to the named defendants and that the object of the agreement was the liquidation of the indebtedness and provided that Watson & Taylor does "hereby sell, assign, transfer and set over" to the companies named all the portion of the general insurance business conducted by it as general agents for those companies, including the good will and rights to renewals, and all papers and records in connection therewith and agreed to "endorse and deposit with H. A. Thornton, as trustee, the entire capital stock of the party of the first part, to be held by such trustee until such time as the indebtedness" was "paid or released"; not to "transfer or permit to be transferred, except as hereinabove set forth, any of the shares of the capital stock"; that the transfer to Thornton should "carry with it the right to vote said shares of stock at any and all meetings of the stockholders or directors" and that "in the event that said indebtedness is not liquidated and paid within five days from the date hereof, said trustee may, and he is hereby empowered to sell said stock, or such portion thereof as may in the opinion of the parties of the second part be necessary to liquidate such indebtedness". The defendant companies which were party to the document agreed to extend the time of payment of the indebtedness five days and that, upon liquidation of the indebtedness within that period, they would cause the trustee to reconvey the capital stock to Watson & Taylor.

The "bill of sale and agreement" of March 19, 1931, is essentially the same, the parties being Watson & Taylor and Car and General Insurance Company, Ltd., State Assurance Company, Ltd., and Provident Fire Insurance Company, represented by G. T. Forbush. The general agency

and the indebtedness which it is the object of the agreement to liquidate are again recited and Watson & Taylor transfers to the named companies the portion of its general insurance business carried on by it as agent for those companies. It is agreed that time for payment shall be extended five days and that in the event of liquidation within five days the bill of sale and agreement shall be null and void but, if payment is not made within that period, to remain in full force and effect.

The third document is a resolution passed by the board of directors of Watson & Taylor on April 7, 1931, that "all notes, stocks and securities in any way belonging to or standing in the name of Watson & Taylor, a corporation, or in the names of any of the individuals, officers or directors of said corporation, which of right belong to or in which said corporation may have any interest, direct, contingent or otherwise, shall be endorsed to and assigned to H. A. Thornton, as Trustee, for the use and benefit of said corporation and the creditors thereof, with full power to hold, sell or otherwise dispose of the same, and to apply them or the proceeds thereof to the indebtedness of said corporation in such manner as in the judgment of the said H. A. Thornton shall be to and for the best interests of all concerned" and, in particular, that certificate No. 5, held in escrow, be endorsed by Watson and Taylor and transferred to Thornton "for the benefit of whom it may concern", subject to the approval and order of the corporation commissioner, and Watson and Taylor were directed to endorse the certificate in conformity with the resolution. At this meeting Watt was informed that certificate No. 5 had already been endorsed in blank but it was later discovered that Watson had not endorsed it and Watt wrote asking him to do so on June 26, 1931, but Watson failed to comply.

The defendants deny the conversion and Watson's ownership of any stock on September 2, 1931, and, by cross-complaint, ask for reformation of the contracts to express the true intent of the parties, which was that Watson as an individual agreed to endorse and transfer his stock, and for specific performance of the contract as so reformed, by the execution of an assignment and endorsement to Thornton, as trustee, for the benefit of the defendants.

The trial court found that the plaintiff was not the owner of nor entitled to any shares of Watson & Taylor stock after April 7, 1931, and specifically found that the firm of Watson & Taylor and Watson and Taylor individually were indebted to the defendants on January 1, 1931, in an amount ascertained on March 31, 1931, to be $106,582.77; that payment had been demanded and the debtor corporation and individuals notified that the contracts would be canceled and suit brought to recover the balance due; that the January 23, 1931, and March 19, 1931, agreements and bills of sale were executed in consideration of five-day extensions of time; that at all times mentioned in the answer the company was insolvent; that Watson and Taylor individually promised to pay the indebtedness; that the contracts were canceled by mutual consent on April 7, 1931; that the portion of the January 23, 1931, document relating to the transfer to Thornton as trustee ''was intended to be and the court expressly finds that in equity and good conscience it should be construed to be the individual agreement of the plaintiff and the said C. Taylor'' and that, at the meeting of April 7, 1931, Watson and Taylor stated that certificate No. 5 had been endorsed in blank and promised and agreed that all stock should be endorsed and assigned to Thornton as trustee with full power to hold, sell or otherwise dispose of it and apply it or the proceeds upon the indebtedness and that the resolution was the memorial of the individual promises and agreements of Watson and Taylor; that the defendants relied thereon and on the statement that certificate No. 5 had been endorsed and that, with the exception of the endorsement of certificate No. 5 by the plaintiff, all the agreements and promises of Watson & Taylor and Watson and Taylor individually had been performed. The court further found that the shares of Watson & Taylor had no market or ascertainable value and were of value to the defendants only for the purpose of winding up and terminating the affairs of the corporation and that the defendants had no adequate remedy in damages for the failure of the plaintiff to endorse certificate No. 5, therefore specific performance would be decreed. Judgment was entered in accordance with the findings, that the plaintiff take nothing, that the contract of January 23, 1931, be reformed as indicated and that the plaintiff endorse certificate No. 5 to Thornton.

The plaintiff appeals on the grounds that the evidence does not support the findings in that it discloses that the transfer was not absolute but merely for the purpose of security; that the pledgee has no right to retain the security after the corporation has discharged its indebtedness, as the defendants admit is now the case; that there has been no sale of the pledged property in satisfaction of the debt and that it was error to reform the contract of January 23, 1931, to make the plaintiff a party thereto.

■ We do not consider it necessary to determine the nature of the transaction of January 23, 1931. Assuming that it was, as the plaintiff contends, merely a security transaction, it nevertheless gave the trustee full power to sell the stock "or such portion thereof as may in the opinion of the parties of the second part be necessary to liquidate the indebtedness" in the event the indebtedness was not paid within the five-day period. Thereafter, it appears that the trustee and Richards and Rhorer took control of the management and it appears from the testimony that, at the March 31, 1931, meeting, at which the amount of the indebtedness was fixed, Watson and Taylor were told that efforts to dispose of the agency to other insurance businesses had been unavailing and that the best disposition that could be made was an agreement with Richards and Rhorer to take over the agency with the understanding that if they were successful in paying off the indebtedness the agency would be theirs. Thereafter the resolution of April 7, 1931, was passed, which, assuming the transfer to Richards and Rhorer to have been wrongful, must be taken as a ratification thereof in that, with knowledge of the working agreement with Richards and Rhorer, the resolution gave Thornton "full power to hold, sell or otherwise dispose of" or apply to the indebtedness all notes, stocks and securities belonging to the corporation or standing in the names of any of the individuals, officers or directors of the corporation in which the corporation had any interest and, in particular, directed the transfer of certificate No. 5. Further evidence of ratification and acquiescence in this plan of reorganization is the cancellation of the existing contracts on the same date by mutual consent and the subsequent execution of a new contract with Watson & Taylor by Richards as president and Watt as secretary.

There was no error in reforming the contract to impose an individual obligation upon the plaintiff since this is clearly an appropriate case for the recognition of the acts of a corporation as in reality those of individuals. The two requirements are that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and that adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice. On the second score it is sufficient that it appear that recognition of the acts as those of a corporation only will produce inequitable results. (*Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673]; *Wenban Estate, Inc.,* v. *Hewlett,* 193 Cal. 675 [227 Pac. 723].)

It follows, therefore, that the judgment should be and it is hereby affirmed.

Shenk, J., Curtis, J., Edmonds, J., Waste, C. J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.