[Civ. No. 29712. First Dist., Div. Two. Aug. 23, 1972.]

JIM ARNOLD et al., Plaintiffs and Appellants, v.
GEORGE E. BROWNE et al., Defendants and Appellants.

(Consolidated Appeals.)

## COUNSEL

William I. Cohen for Plaintiffs and Appellants.

Collins, Hays, Stewart, Berg, Pott & Sanford and Walter V. Hays for Defendants and Appellants.

## OPINION

**TAYLOR, P. J.**—In these consolidated appeals, plaintiffs, Arnold, Hench and Scheetz, appeal from that portion of the judgment denying recovery in their action against the individual defendants on grounds of *alter ego*.[1] Arnold, Hench and Scheetz contend that the evidence does not support the trial court's finding of no liability, and that in any event, the individual defendants are not entitled to attorneys' fees. Browne, Bolton, Valentine, Peterson and McCann[2] appeal from that portion of the judgment denying them attorneys' fees. Their contention that Civil Code section 1717 is a procedural statute intended to retroactively award attorneys' fees "to any party in litigation" over a contract, presents a question of first impression.

The trial court found the facts as follows: In January 1967, Arnold, Hench and Scheetz were the sole shareholders of Survey Copters, Inc., a California corporation. About that time, Browne, Peterson, Bolton, McCann, Valentine and Haggis entered into a general partnership under the name of Inter Helo Company. Browne was the managing partner and was given exclusive control over its business and affairs, including the power to sign contracts and to direct business operations.

On June 5, 1967, Browne, on behalf of the partnership, entered into

---

[1] The corporate defendant, Inter Helo, stipulated to liability at the outset of the trial.
[2] Defendant, Ted Haggis, is not a party to the cross-appeal.

a written agreement with Arnold, Hench and Scheetz for the purchase of all the common stock of Survey Copters (hereafter the agreement), the pertinent portions of which provided: 1) Arnold, Hench and Scheetz agreed to sell to Browne all shares of Survey Copters for a total purchase price of $54,038.25, payable in specified installments over approximately one year; 2) Browne had the right to assign the contract to Inter Helo Corporation and "shall have no personal liability under this Agreement after any such assignment"; and 3) Inter Helo Corporation was to deliver to Arnold, Hench and Scheetz a negotiable promissory note, in corporate form, for the unpaid balance of the purchase price, payment to be secured by: 1) a pledge of the stock of Survey Copters, and chattel mortgages and security interests in the U 12 E helicopter and other personal property of Survey Copters owned at the closing. Survey Copters also guaranteed payment of the note. At the time Arnold, Hench and Scheetz transferred the stock of Survey Copters, that corporation had substantial assets and value; its net assets exceeded its liabilities by over $33,000, of which over $21,000 was cash.

Prior to the execution of the agreement, Browne, Peterson, Bolton, McCann, Valentine and Haggis made no misrepresentations of fact to Arnold, Hench and Scheetz. Prior to the execution of the agreement for the sale of the stock of Survey Copters, Browne stated to Arnold, Hench and Scheetz that he *expected* Inter Helo Corporation to be capitalized in the amount of $150,000.

Inter Helo Corporation was incorporated on June 8, 1967. On June 9, 1967, a collateral note in the amount of $40,500 (the balance due to Arnold, Hench and Scheetz under the agrement) was executed by Browne as president of Inter Helo Corporation. Additional documents were delivered to Arnold, Hench and Scheetz, including a guaranty of payment of the note by Survey Copters; a security agreement from Survey Copters covering all equipment, including a chattel mortgage of the U 12 E helicopter; and a pledge agreement whereby Inter Helo Corporation pledged all of the stock of Survey Copters as security for the performance under the promissory note.

On June 10, 1967, Browne executed an assignment of his agreement with Arnold, Hench and Scheetz to Inter Helo Corporation, which accepted the duties of performance.

On October 23, 1967, Inter Helo Corporation obtained a permit from the California Corporations Commissioner authorizing the issuance of 5,000 shares of $10 par value stock to the individual defendants in exchange for the transfer to the corporation of their respective interests in

the partnership. On November 14, 1967, pursuant to the permit, the individual defendants transferred, assigned and conveyed to Inter Helo Corporation all of their right, title and interest in and to the partnership in exchange for the issuance to them of 5,000 shares of $10 par value stock as follows: Browne, 1,715 shares; Peterson, 600 shares; Bolton, 280 shares; McCann, 680 shares; Valentine, 600 shares; and Haggis, 1,125 shares. No other assets were transferred to the corporation in exchange for stock by the individual defendants, or by any other person.

Inter Helo Corporation was not so inadequately capitalized as to justify a finding that the corporation was the *alter ego* of the individual defendants. Specifically, the individual defendants contributed the following assets:

a) Through the partnership, $13,000 in cash and much more in uncompensated time on necessary promotional work, including: 1) the negotiation of a contract with U.S. Geological Survey; 2) the purchase of an SL-3 helicopter in New Mexico; and 3) the negotiation for the purchase of Survey Copters.

b) A $25,000 loan from Haggis, personally guaranteed by the individual defendants, less than $4,000 of which was repaid by Inter Helo Corporation.

c) A $55,000 loan on the SL-3 helicopter, personally guaranteed by Bolton.

The corporate affairs of Inter Helo Corporation were conducted in accordance with normal corporate practice. None of the individual defendants converted any assets of the corporation to their personal use and benefit, commingled personal and corporate funds, or committed any other acts of fraud or bad faith.

Subsequent to the incorporation of Inter Helo Corporation, the individual defendants entered into a written partnership agreement for Inter Helo Company, wherein they agreed that the value of the partnership was $50,000. Subsequently, the individual defendants, as officers and directors of Inter Helo Corporation, adopted a resolution finding that the fair value to the corporation of the partnership, Inter Helo Company, was $50,000 and agreed to issue to themselves as partners 5,000 shares of $10 par value stock of Inter Helo Corporation, in exchange for their interests in the partnership.

Shortly after its incorporation, Peterson advised the board of directors of Inter Helo Corporation that at least $115,500 in cash would be required from capitalization to meet its operating costs and obligations,

including those to Arnold, Hench and Scheetz under the promissory note, for the period from June through December 1967, if the operation was to be expanded as planned.

After the transfer of stock of Survey Copters, the individual defendants made themselves directors and officers and as such, executed the guaranty, the security agreement, and other documents to secure to Arnold, Hench and Scheetz the payment by Survey Copters of the monies due and owing by Inter Helo Corporation. The individual defendants, as officers and directors of Inter Helo Corporation also executed the pledge agreement, whereby the stock of Survey Copters was pledged to secure the performance by Inter Helo Corporation of the payments under the promissory note.

Survey Copters defaulted on its guaranty and failed to make any payments thereunder after due notice and demand. Inter Helo Corporation likewise defaulted on the payments of its obligations. As of April 7, 1970, the balance owing was $15,393.21, plus $1,238.55 accrued interest. In addition, Arnold, Hench and Scheetz incurred a reasonable attorneys' fee of $7,000 and reimbursable expenses of $3,923.18, as well as out-of-pocket expenses in the following amounts: Arnold, $303.92; Scheetz, $298.88, and Hench, $218.78 for transportation expenses. Inter Helo Corporation and Survey Copters are unable to pay plaintiffs the monies due and owing to them. Survey Copters has no assets.

Shortly after incorporation and transfer of the stock of Survey Copters, Inter Helo Corporation assumed and paid the promotional expenses of Browne incurred by him on behalf of the corporation, as well as those of Inter Helo Company, the partnership. Inter Helo Corporation also repaid to the individual defendants loans it had made from them at a time just prior to and after default by Inter Helo Corporation. Inter Helo Corporation also assumed and became primarily liable to the Bank of Montreal on defendant Haggis' personal obligation, which was personally guaranteed by Valentine, Peterson and Browne. Inter Helo Corporation stipulated to liability at the outset of the trial. The individual defendants incurred reasonable attorneys' fees in the sum of $7,000 in defense of the action.

The court concluded that: 1) Arnold, Hench and Scheetz were entitled to judgment against Inter Helo Corporation; 2) the facts *do not* justify disregarding the corporate entity of Inter Helo Corporation and holding the individual defendants liable on grounds of *alter ego;* 3) defendants have not presented facts entitling them to relief on their counterclaim without prejudice to the assertion of any rights they may have under the agreement should facts and circumstances arise entitling them to relief in the future;

4) the individual defendants are not entitled to attorneys' fees. The court entered its judgment accordingly.

## I. THE ARNOLD, HENCH AND SCHEETZ APPEAL FROM THE PORTION OF THE JUDGMENT DENYING LIABILITY ON GROUNDS OF ALTER EGO.

■ As indicated above, the major contention on this appeal is the sufficiency of the evidence to support the findings and judgment.

■ There is substantial evidence contained in the record to uphold the findings of the trial court under the time-honored rule that on appeal, all conflicts in the evidence must be resolved in favor of the respondent, and that all legitimate and reasonable inferences will be indulged in to uphold the findings of the trial court. ■ It is an elementary principle of law that the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial judge[3] (*Thayer* v. *Pacific Elec. Ry. Co.,* 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Wade* v. *Campbell,* 200 Cal.App.2d 54, 63 [19 Cal.Rptr. 173, 92 A.L.R. 2d 966]). ■ Arnold, Hench and Scheetz acknowledge that any conflicts in the evidence must be resolved in favor of respondents and therefore state that they set forth only the undisputed testimony that they feel is sufficient to compel reversal of the judgment. What this contention overlooks is that this "undisputed testimony" may not be considered to the utter disregard of disputed testimony which favors Browne, Bolton, Valentine, Peterson, McCann and Haggis. The Arnold, Hench and Scheetz statement of facts presents a case upon which a trial court *might* decide to pierce the corporate veil, but looking to all of the facts, which we have narrated above, it is another matter to say that under these facts the corporate veil must be pierced.

■ It is a fundamental rule that "[t]he conditions under which the corporate entity may be disregarded, or the corporation be regarded as the *alter ego* of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance" (*Stark* v. *Coker,*

---

[3]In this connection, we do not consider it proper for us to accede to the request of Arnold, Hench and Scheetz that we take judicial notice of the subsequent Inter Helo bankruptcy proceedings that were not before the trial court and not presented to us in certified form (Evid. Code, § 459; *Terzian* v. *California Cas. Indem. Exch.,* 3 Cal. App.3d 90, 98 [83 Cal.Rptr. 255]).

20 Cal.2d 839, 846 [129 P.2d 390]; *H. A. S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518, 523 [133 P.2d 391, 145 A.L.R. 349]; *Automatriz etc. De California* v. *Resnick,* 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]). ■ The two basic requirements are: 1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and 2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow *(Automotriz etc. De California* v. *Resnick, supra,* p. 796; *Stark* v. *Coker, supra,* p. 846; *Watson* v. *Commonwealth Ins. Co.,* 8 Cal.2d 61, 68 [63 P.2d 295]; *Minifie* v. *Rowley,* 187 Cal. 481, 487 [202 P. 673]). With respect to the second requirement, it is sufficient that it appear that recognition of the acts as those of a corporation only will produce inequitable results *(Stark* v. *Coker, supra,* p. 846; *Watson* v. *Commonwealth, supra,* p. 68). ■ The general rule is thus stated as follows: " 'Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.' " *(Talbot* v. *Fresno-Pacific Corp.,* 181 Cal.App.2d 425, 431 [5 Cal.Rptr. 361]; *Temple* v. *Bodega Bay Fisheries, Inc.,* 180 Cal.App.2d 279, 283 [4 Cal.Rptr. 300]).

■ The gist of the cases which have considered the doctrine is that *both* of these requirements must be found to exist before the corporate existence will be disregarded; that such determination is primarily one for the trial court and is not a question of law; and that the conclusion of the trier of fact will not be disturbed if it be supported by substantial evidence (see also *H. A. S. Loan Service, Inc.* v. *McColgan, supra,* p. 524; *Kazutoff* v. *Wahlstrom,* 196 Cal.App.2d 65, 69 [16 Cal.Rptr. 207]; *Talbot* v. *Fresno-Pacific Corp., supra,* p. 432; *Carlesimo* v. *Schwebel,* 87 Cal.App. 2d 482, 491 [197 P.2d 167]; *Erkenbrecher* v. *Grant,* 187 Cal. 7 [200 P. 641]; *Associated Vendors, Inc.* v. *Oakland Meat Co.,* 210 Cal.App.2d 825, 836-838 [26 Cal.Rptr. 806]).

Among the possible factors pertinent to the trial court's determination are: commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; the treatment by an individual of the assets of the corporation as his own; the failure to obtain authority to issue or subscribe to stock; the holding out by an individual that he is personally

liable for the debts of the corporation; the failure to maintain minutes or adequate corporate records and the confusion of the records of the separate entities; the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; the failure to adequately capitalize a corporation; the absence of corporate assets, and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest or concealment of personal business activities; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; the use of the corporate entity to procure labor, services or merchandise for another person or entity; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; the contracting with another with intent to avoid performance by use of a corporation as a subterfuge of illegal transactions; and the formation and use of a corporation to transfer to it the existing liability of another person or entity. (*Associated Vendors, Inc.* v. *Oakland Meat Co., supra,* pp. 838-840).

In the instant case, the presence or absence of any of these factors, as well as the consideration of any other circumstances which would have warranted the trier of fact to disregard the corporate entity, were within the province of the trial court. There was ample evidence to support the inferences drawn by the lower court that there was not such a unity of interest between the Inter Helo Corporation and the individual defendants as to destroy the individuality of the corporation. Inter Helo Corporation was formed for the purpose of transferring to it the existing assets and liabilities of the Inter Helo partnership. The transfer was part of a standard promoters agreement, the intent and consequences of which were known and understood by all of the parties, who were all represented by legal counsel (*Shell Oil Co.* v. *Hanchett,* 18 Cal.App.2d 240 [63 P.2d 338]).

Arnold, Hench and Scheetz urge that the individual defendants assigned their obligations to a dummy corporation that they represented would be adequately capitalized. The court, however, found that there were no misrepresentations or acts of bad faith or fraud by the individual defendants. The court merely found that Browne indicated he "expected" that Inter Helo Corporation would be eventually capitalized in the amount of $150,000. Furthermore, Arnold, Hench and Scheetz knew most of the

individual defendants and knew that Inter Helo Corporation was being formed to conduct the same kind of business as Survey Copters. The intent, therefore, to run Survey Copters and Inter Helo Corporation as a single business was obviously understood and contemplated by all parties from the beginning. In any event, the intermingling of the two corporations has no relevance to the liability of the individual defendants. There was no commingling or confusion between the assets of the individual defendants and either corporation. Both corporations were clearly liable to Arnold, Hench and Scheetz under the agreement, and it was obvious that the payment of the sums due under the agreement depended on the successful operation of a single business enterprise—the conduct of aerial surveying and measuring for maps for the U.S. Geological Survey, through the use of helicopters and special sighting devices, and of providing helicopter service to the public.

Other acts of alleged misconduct include Inter Helo Corporation's assumption of the Haggis loan and payments and the temporary loans made to the corporation by Bolton and Peterson in January and February 1968. The uncontroverted evidence indicates that the $25,000 that Haggis borrowed from the Bank of Montreal was turned over to Inter Helo Corporation to provide the initial capital. The fact that this loan was personally guaranteed by the other individual defendants can reasonably be viewed as an additional contribution of capital from each of them. The short term loans were clearly and accurately reflected in the minutes and represented legitimate attempts to keep the corporation going.

Arnold, Hench and Scheetz further contend that Inter Helo Corporation was undercapitalized. They have, however, cited no cases in which an appellate court has held that a business was undercapitalized when the trial court made a contrary finding. In almost every instance where the trial court has found inadequate capitalization, there are other factors present (see cases above cited with reference to capitalization). ■ Evidence of inadequate capitalization is, at best, merely a factor to be considered by the trial court in deciding whether or not to pierce the corporate veil (*Harris* v. *Curtis,* 8 Cal.App.3d 837, 841 [87 Cal.Rptr. 614]). To be sure, it is an important factor, but no case has been cited, nor have any been found, where it has been held that this factor alone *requires* invoking the equitable doctrine prayed for in the instant case. In *Carlesimo* v. *Schwebel, supra,* page 482, a total capitalization of $1,221.82 was held not to be insufficient, as a matter of law, to operate a business engaged in the buying and selling of groceries.

In the instant case, the trial court found that "INTER HELO CORPORATION

was not so inadequately capitalized as to justify a finding that the corporation was the alter ego of the individual defendants." The court found that through the partnership, Inter Helo Corporation acquired $13,000 in cash and more in uncompensated time on necessary promotional activities. In addition, there was the $25,000 loan from Haggis and the $55,000 loan on the SL-helicopter, personally guaranteed by Bolton. As stated in *Harris v. Curtis, supra,* at page 841: "There is no question that the corporation was underfinanced, a condition not uncommon among new small businesses, including small corporations privately financed. It is common knowledge that many such corporations have been highly successful, that others have prospered but without legendary success, and that still others have failed in part, at least, because of inadequate capital. Such is the story of our American enterprise system."

Arnold, Hench and Scheetz' assertion of "inequitable result" is predicated upon the argument that the individual defendants intentionally created a corporation without sufficient assets to meet daily business requirements. The thrust of this argument is the claim of undercapitalization and the contention that a creditor will remain unsatisfied if the corporate veil is not pierced. As we have pointed out above, the prerequisite of "inequitable result" must coexist with the other requirement of unity of interest and ownership, which the trial court has found not to exist in this case. Moreover, as we have also indicated, the trial court was justified in its finding of adequate capitalization. Certainly, it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an "inequitable result." In almost every instance where a plaintiff has attempted to invoke the doctrine, he is an unsatisfied creditor. The purpose of the doctrine is not to protect every unsatisfied creditor, but rather, to afford him protection, where some conduct amounting to bad faith makes it inequitable, under the applicable rule above cited, for the equitable owner of a corporation to hide behind its corporate veil.

II. The Appeal by Browne, Bolton, Valentine, Peterson and McCann from the Portion of the Judgment Denying Attorneys' Fees.

■ Civil Code section 1717 provides: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

As the agreement for the transfer of the stock of Survey Copters contains no provision for attorneys' fees, the individual defendants on their appeal rely on the attorneys' fees provision of the promissory note from Inter Helo Corporation to Arnold, Hench, Scheetz and Browne. The individual defendants contend on their appeal that the "prevailing party" mentioned in the first paragraph of the statute necessarily refers to any party prevailing in litigation over the contract.

The general rule in this state has long been that unless there is an express statute or contractual provision, attorneys' fees are paid by the party employing the attorney (*Genis* v. *Krasne,* 47 Cal.2d 241 [302 P.2d 289]; *Heidt* v. *Miller Heating & Air Conditioning Co.,* 271 Cal.App.2d 135 [74 Cal.Rptr. 695]; *Carroll* v. *Hanover Insurance Co.,* 266 Cal.App.2d 47 [71 Cal.Rptr. 868]).

As the individual defendants point out, Civil Code section 1717 was enacted in 1968 to establish mutuality of remedy in situations where the contract contains a provision making the recovery of attorneys' fees available for only one party (*Heidt* v. *Miller Heating & Air Conditioning Co.,* *supra,* p. 137; Review of Selected 1968 Code Legislation (Cont. Ed. Bar) pp. 35-36).

The argument of the individual defendants, however, overlooks the language of the statute that specifically refers to "one of the parties" to the contract. Here, Browne signed the promissory note as president of Inter Helo Corporation; it was stipulated at the outset of trial that the corporation was in default under the note and that Arnold, Hench and Scheetz were entitled to judgment against the corporation, including attorneys' fees, in accord with the provision of the promissory note. Thus, the individual defendants are not parties to any contract containing a provision for attorneys' fees and Arnold, Hench and Scheetz are the "prevailing parties" under the contract within the meaning of the statute (cf. *Arthur B. Siri, Inc.* v. *Bridges,* 189 Cal.App.2d 599, 603 [11 Cal.Rptr. 322]; *Wiener* v. *Van Winkle,* 273 Cal.App.2d 774 [78 Cal.Rptr. 761], wherein the court noted at page 788: "The purpose of upholding an attorney's fees provision in a promissory note is to allow a plaintiff to recover the full amount due him without such amount being diminished by attorney's fees.")

We conclude that the trial court properly held that the individual defendants were not entitled to attorneys' fees, as they were not "parties" to the contract. We note that the rule under Civil Code section 1717 appears to be that a *party to the contract* is entitled to attorneys' fees even though the contract was executed and the action filed before the enactment of the statute (*System Inv. Corp.* v. *Union Bank,* 21 Cal.App.3d 137, 161-165 [98 Cal.Rptr. 735], following *Coast Bank* v. *Holmes,* 19 Cal.App.3d 581, 593-597 [97 Cal.Rptr. 30], hg. den. Oct. 21, 1971, but noting contrary dictum in *Malibou Lake Mountain Club, Ltd.* v. *Smith,* 18 Cal.App.3d 31, 35 [95 Cal.Rptr. 553], hg. den. Aug. 13, 1971).

The portions of the judgment appealed from are affirmed. Each party to bear own costs.

Kane, J., and Rouse, J., concurred.