INRYCO, INC., Plaintiff-Appellee,

v.

CGR BUILDING SYSTEMS, INC.; R.C. Reiman; Thomas Reiman and Walter Reiman, Defendants-Appellants.

No. 84-2129.

United States Court of Appeals, Tenth Circuit.

Jan. 2, 1986.

---

George A. Zunker and Carole Shotwell, Urbigkit, Whitehead, Zunker and Davidson, P.C., Cheyenne, Wyo., for plaintiff-appellee.

Henry F. Bailey, Jr., Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., for defendants-appellants.

Before BARRETT, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiff Inryco, Inc. ("Inryco") sued CGR Building Systems, Inc. ("CGR"), and its three shareholders, R.C., Thomas, and Walter Reiman, in the United States District Court for the District of Wyoming for indebtedness incurred between August, 1980 and April, 1983, in the amount of $39,999.76. Inryco prevailed in the district court, and CGR and the Reimans appeal.

CGR began operations in May of 1980 as a general partnership. The partnership in-

terests were held one-third by the three Reiman defendants, one-third by Charles and Nicolee Coleman, and one-third by Noel Griffith, Jr.; $2,500 was contributed as operating capital for each undivided partnership interest.

The day to day operations were carried out by the Colemans, and the other partners were kept informed of the partnership's business through monthly meetings. Griffith and the Colemans terminated their involvement in CGR in 1982, leaving the Reimans as the only owners.

CGR incorporated on or about July 1, 1981. Little change was made in the operations of the company. CGR operated at the same address, used the same letterhead and logo, maintained the same checking account, checks, and books, and was still managed by the Colemans. The district court found that at the time of incorporation CGR was experiencing cash flow problems, and was having difficulty paying its debts as they came due. The district court found that at the time of incorporation CGR had accounts payable far in excess of the combined value of its assets and capital. The corporation failed to observe some corporate formalities, such as maintaining adequate books of account and holding meetings of directors and shareholders. Other corporate formalities were observed: corporate funds were segregated from the shareholders' personal assets, and the shareholders treated the corporation as a separate entity. The court below found that the corporation was not operated as the alter ego of the individual shareholders.

The indebtedness in question here arose in a series of transactions between plaintiff Inryco and defendant CGR from 1980 to 1983. Inryco is in the business of supplying construction materials to dealers and general contractors. In 1980 Mr. Greg Reedy, a sales representative for Inryco, approached CGR about the possibility of CGR becoming a dealer for Inryco's products. After some negotiation, the parties entered into such an arrangement. Inryco, in reliance upon the strong financial posi-tion of the individual CGR partners, especially the Reimans, extended a line of credit to CGR of $75,000, which was later raised to $100,000. Inryco told CGR to deal with Mr. Frank Petrie in all credit-related matters.

It is undisputed that Inryco did not receive actual notice of CGR's incorporation. Mr. Reedy knew of CGR's plan to incorporate in June of 1981, but he never communicated that information to Mr. Petrie. Mr. Reedy had previously become a shareholder of CGR Building Systems of Colorado, Inc., an affiliate of appellant CGR, which the trial court judge determined was, in practice, an alter ego of CGR.

The total indebtedness of CGR to Inryco is $39,999.76. There is no question as to $13,588.66 of the debt, which was incurred prior to incorporation and for which the Reimans are personally liable as general partners. There is also no question that CGR is liable for the $25,411.10 in debt incurred after incorporation. The only question is whether the Reimans should be held personally liable, through the doctrine of "piercing the corporate veil," for that portion of the debt incurred after incorporation.

### Piercing the Corporate Veil

This is a suit based on diversity, so under the *Erie* doctrine the substantive law of the state of Wyoming applies. This Court has previously held that the interpretations of a state's law by the district judge sitting in that state are entitled to "some deference" on review. *Colonial Park Country Club v. Joan of Arc,* 746 F.2d 1425 (10th Cir.1983).

The district court found that under Wyoming law:

The determination whether the Court should pierce the corporate veil and hold shareholders of a corporation personally liable for the obligations of the corporation must be made on a case by case basis in light of the particular facts presented to the Court. *Yost v. Harpel,* 674 P.2d 712 (Wyo.1983); *Opal Mercantile v. Tamblyn,* 616 P.2d 776 (Wyo.

1980). The Court will disregard the separate corporate existence where necessary to further public policy or to promote the ends of justice. *Id.; AMFAC Mechanical Supply Co. v. Federer*, 645 P.2d 73, 78 ([Wyo.] 1982); *Peters Grazing Ass'n v. Legerski*, 544 P.2d 449 (Wyo.1975), *reh. denied* 546 P.2d 189. A variety of factors are to be considered by the Court in making the ultimate determination concerning whether recognition of the separate corporate entity would result in injustice in a given case. *Id.; Arnold v. Browne*, 27 Cal.App.3d 286, [386], 103 Cal.Rptr. 775, 781–782 (1972), overruled on other grounds 25 Cal.3d 124, 158 Cal.Rptr. 1, 599 P.2d 83 (1979). Actual fraud is not necessary as a predicate for discarding separate corporate existence; the Court may pierce the corporate veil to prevent unjust or inequitable consequences. *AMFAC Mechanical Supply Co. v. Federer*, 645 P.2d 73, 79 (Wyo.1982); *Caldwell v. Roach*, 44 Wyo. 319, 12 P.2d 376 (1932); *State ex. rel. Christiansen v. Nugget Coal Co.*, 60 Wyo. 51, 144 P.2d 944 (1944). Where the Court finds gross undercapitalization and/or complete domination of corporate affairs by shareholders it will be far more likely to pierce the corporate veil. *Id.; National Marine Service Inc. v. C.J. Thibodeaux & Co.*, 501 F.2d 940 (5th Cir.1974); *H. Ballatine on Corporations*, Section 129 pp. 302–303; Fletcher, Cyclopedia of the Law of Private Corporations, Section 44.1 p. 249 (Rev.Ed.1974, Cum.Supp.1981).

Having examined the authorities cited, and under the proper standard of deference, we conclude that the district court properly interpreted Wyoming law.

With respect to the capitalization of CGR at the time of incorporation, the district court found that:

At the time of incorporation CGR Building Systems was experiencing cash flow problems, and was having difficulty paying its bills, including amounts owing plaintiff. At such time the firm had approximatelty $1,500 in its checking account, owned no assets of significant value, and had acounts payable far in excess of the combined value of its assets and capital.

The Reimans assert that there was no evidence at trial to support this conclusion.

■ After a careful examination of the record, we cannot say that these findings of fact were "clearly erroneous." The determinations of fact are thus binding on this court. Fed.R.Civ.P. 52, *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144 (10th Cir.), *cert. denied* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

■ Ordinarily, the corporate form shields investors from personal liability for the liabilities of the corporation. But where, as here, the corporation is capitalized so meagerly at the time of incorporation, to shield these investors from liability would be to exalt form over substance. CGR did not have adequate capital to pay its debts when it was incorporated. The district court properly found that under these circumstances, the Reiman partners remained personally liable for corporate debt.

### Notice of Incorporation

It is arguable that despite the undercapitalization of CGR, Inryco should not be able to reach the personal assets of the Reiman defendants. The individual defendants maintain that Inryco had notice of the change in business organization from a partnership to a corporation and that they, as shareholders, are relieved of the responsibility for debts incurred thereafter. It was conceded at trial there was no actual or formal notice given but defendants urge on appeal that an agent of Inryco, Mr. Reedy, had actual knowledge of the change and therefore Inryco had notice of the incorporation.

■ The district court found that Inryco extended credit to CGR Building Systems as a partnership upon an open account in reliance upon personal assets of the general partners, particularly the Reimans. In-

dividual defendants as shareholders of a newly formed corporation are estopped from asserting limited liability where a partnership is subsequently incorporated with the sole shareholders being the former partners, maintaining the same name but with the addition of "incorporated," carrying on the business as it had as a partnership and without giving formal notice to its creditors. *Kapp v. Naturelle, Inc.*, 611 F.2d 703 (8th Cir.1979); *Kingsberry Homes v. Corey*, 457 F.2d 181 (7th Cir. 1972); *Northway Lanes v. Hackley Union Nat. Bank and Trust Co.*, 464 F.2d 855 (6th Cir.1972).

■ Defendants assert that Mr. Reedy's knowledge of the incorporation of CGR must be imputed to Inryco as he was the agent of Inryco. It is a general rule of the law of agency that knowledge of the agent will be imputed to the principal. *Commercial Bank & Trust Co. v. Hauf*, 32 Wyo. 127, 230 P. 539 (1924). *See also U.S. Fidelity & Guar. Co. v. State of Oklahoma*, 383 F.2d 417 (10th Cir.1967). It is also well established that a corporation is bound by the knowledge acquired by or notice given to its agents or officers which is within the scope of their authority. *American Standard Credit v. National Cement Co.*, 643 F.2d 248 (5th Cir.1981); *Ritchie Grocer Co. v. Aetna Casualty & Sur. Co.*, 426 F.2d 499 (8th Cir.1970); 19 Am.Jur.2d *Corporations* § 1263 (1965). We find it unnecessary to address whether the knowledge of CGR's incorporation was within the scope of Mr. Reedy's authority as the general rule is subject to the exception that the agent must not have been engaged in a transaction in which he is interested adversely to his principal. *Commercial Bank, 230 P. at 540.*

The trial court found as a matter of fact that Mr. Reedy acquired knowledge of the fact that CGR had incorporated in June of 1981, but failed to communicate this information to Inryco's credit management personnel, including Mr. Petrie. Further, Mr. Reedy had acquired shares in CGR Building Systems, Inc. of Colorado, which the court found was an alter ego of CGR Build-

ing Systems, Inc. As a result of his interests and activities in CGR Building Systems, Inc. of Colorado, Mr. Reedy had interests adverse to those of Inryco concerning the extension of credit by plaintiff to CGR Building Systems, Inc. Where, as here, the agent is found to have acted adversely to the principal, the knowledge or notice acquired by such agent will not be imputed to his principal. *Id.* The trial judge's findings of fact in an action tried without a jury will not be set aside unless clearly erroneous. *U.S. Fidelity*, 383 F.2d at 421. Our review of the record reveals that this factual determination is supported by substantial evidence.

AFFIRMED.