Filed 2/9/15  Elder v. Blakes CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ISAAC ELDER,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>DAVID T. BLAKES, JR.,<br><br>　　　　Defendant and Appellant. | B250845<br><br>(Los Angeles County<br>Super. Ct. No. BC 478419) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

David T. Blakes, Jr., in pro. per., for Defendant and Appellant.

Law Offices of A.J. Glassman and A.J. Glassman for Plaintiff and Respondent.

_____

**INTRODUCTION**

Defendant and appellant David T. Blakes, Jr. (Blakes) appeals from a July 16, 2013 judgment awarding plaintiff and respondent Isaac Elder $55,100. Following a two-day bench trial, the trial court found Blakes personally liable on Elder's claims for breach of a promissory note, breach of an oral guaranty, and money lent. Blakes makes the following contentions on appeal: (1) Elder failed to name 4709 and 5019 August St., LLC (the LLC) as a defendant, which was the named debtor in the underlying promissory note; (2) Elder's action is barred by the one-action rule (Code Civ. Proc., § 726) because the underlying promissory note was secured by an interest in real property; (3) Elder cannot recover against Blakes on his claims for breach of a promissory note and money lent because the underlying promissory note expressly obligates the LLC, and not Blakes, to repay Elder's outstanding debt; and (4) Elder's claim for breach of an oral guaranty is barred by the statute of frauds (Civ. Code, § 1624, subd. (a)). We affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL SUMMARY**[1]

*1. The Investment Agreement, the Promissory Note, and Blakes's Promise to Pay*

Around 2008, Elder's longtime friend, Bryan Pool, asked Elder to invest in a supposed money-lending business Pool had formed with Blakes. According to Pool, he and Blakes had begun issuing hard-money loans to individuals who had difficulty obtaining loans from other institutions. Pool told Elder that any money Elder invested would be used to issue loans to Pool's and Blakes's customers. Elder agreed to invest in Pool's and Blakes's business (the investment agreement), and he wrote a cashier's check for $50,000, made out to Pool's personal bank account. According to Elder, the

---

[1]  Blakes has supplied an incomplete record, which includes only the following items: the reporter's transcript from the first day of hearings from a two-day bench trial on Elder's first amended complaint; a copy of Elder's first amended complaint; a copy of Blakes's answer to the first amended complaint; a copy of Blake's trial brief; and a copy of the trial court's judgment. The record does not include, among other things, the reporter's transcript from the second day of trial. The following factual and procedural summary is drawn from the portions of the record Blakes has supplied on appeal.

investment agreement obligated Pool and Blakes to repay the $50,000 investment, with interest, in regular increments, with the entire investment principal to be repaid in full by December 31, 2008.

On December 31, 2008, after making several payments on the investment agreement, Pool informed Elder that he and Blakes would be unable to repay the outstanding principal by the time specified in the agreement because he and Blakes had decided to use Elder's investment to purchase real property through the LLC, which Blakes and Pool owned. According to Pool, he had deposited Elder's check into his personal bank account and later transferred the funds to an escrow account established by the LLC. According to Elder, at the time he wrote the check, neither Blakes nor Pool had informed him that his investment would be used by the LLC to purchase real property. As of December 31, 2008, $40,000 of Elder's investment principal remained outstanding.

In January 2009, Elder met with Blakes and Pool on several occasions to discuss how they (Blakes and Pool) intended to repay the outstanding principal. During their first meeting, Blakes assured Elder that the properties purchased by the LLC were generating sufficient revenue to cover the entire amount of Elder's investment. During their second meeting in January 2009, Blakes gave Elder a two-year revenue-projection spreadsheet for the properties, and he assured Elder that, based on those projections, the outstanding principal would be repaid by June 2009.

On January 29, 2009, Blakes, Pool, and Elder executed a written agreement (the promissory note) through which the LLC agreed to repay the amount of principal outstanding on Elder's investment, with interest. Per the terms of the promissory note, the LLC was obligated to repay the outstanding $40,000, with interest at a rate of 12 percent per annum, through quarterly payments, with the entire outstanding principal to be repaid by December 31, 2009. The promissory note stated that it was secured by real property held by the LLC.[2]

---

[2] There is no evidence in the record that the LLC, Blakes, or Pool ever executed a deed of trust in favor of Elder for the property named in the promissory note.

By July 2009, Elder had yet to receive any payments on the promissory note. Elder threatened to sue Blakes and Pool, but Blakes assured Elder that the money would be repaid. Blakes told Elder that he intended to sell two other pieces of property he personally owned, and that he would repay Elder with the proceeds from those sales.

In November 2009, Elder met with Blakes again. Blakes continued to assure Elder that the entire outstanding principal would be repaid by December 31, 2009. Blakes told Elder, "By the end of this contract here, I'll be able to pay you . . . the 12 percent and your principal back." He also told Elder, "I'm going to take care of you." According to Elder, Blakes personally guaranteed that he would repay the entire principal by the end of the promissory note's term.

By December 31, 2009, the entire principal on the promissory note remained outstanding. In January 2010, Elder met with Blakes and Pool, and Blakes again assured Elder that he would repay the entire principal, this time from the proceeds of the planned sale of his personal residence. After Blakes sold his personal residence at some point in 2010, Elder received four payments totaling $6,500 through checks written by Pool. Elder received no other payments from Blakes, Pool, or the LLC.

Near the end of 2010, Elder learned that the property held by the LLC, which was securing the promissory note, had entered foreclosure and had been placed into a rent escrow account in 2007 or 2008. By August 17, 2009, the property had been sold through foreclosure.

## 2. *The Lawsuit*

On May 8, 2013, Elder filed a first amended complaint (FAC)[3] against Blakes, alleging causes of action for (1) breach of a promissory note; (2) money lent; (3) fraud; (4) breach of an oral guaranty; and (5) unjust enrichment. In the FAC, Elder alleged that the LLC was a shell company exclusively controlled by Blakes. Elder sought recovery of the promissory note's outstanding principal and unpaid accrued interest directly from Blakes. On May 20, 2013, Blakes filed an answer denying, among other things, Elder's

---

[3] A copy of the original complaint is not included in the record.

allegation that the LLC was a shell company. Blakes did not raise the nonjoinder of the LLC as an affirmative defense in his answer or by demurrer.

On July 8, 2013, Blakes filed a trial brief. In his trial brief, Blakes argued Elder could not recover under the promissory note on an alter-ego theory of liability because Elder had failed to name the LLC as a defendant. Blakes also argued Elder's claims were barred by the one-action rule because the underlying promissory note was secured by an interest in real property held by the LLC, and Elder was required to foreclose on that interest before initiating suit under the note. Blakes further argued Elder's claims for money lent and fraud were not supported by the evidence. Finally, Blakes argued Elder's claim for breach of an oral guaranty was barred by the statute of frauds.

A two-day bench trial was conducted on July 11 and 12, 2013. During the first day of trial, the trial court addressed Blakes's nonjoinder argument. The trial court stated: "The evidence so far – if I may be so bold as to interject this, the evidence that you [Blakes] are personally on the hook is not dependent upon any part of being an alter ego theory. The evidence you are on the hook is [Elder's testimony] that on numerous occasions you affirmed that and indicated that you would make good on the money. [¶] And it's obvious he testified that it was a personal amount of business. But based upon the witness's testimony, it's obvious it would be personal if it was coming out of the proceeds of your personal home. And there's no evidence your home was part of this LLC."

On July 16, 2013, the trial court entered judgment in the amount of $55,100 in favor of Elder as to his claims for breach of a promissory note, breach of an oral guaranty, and money lent.[4] Blakes timely filed this appeal.

---

[4]   During the hearing on the first day of trial, the parties consented to the trial court's proposal that the court issue an oral ruling at the conclusion of trial. As noted, the record does not contain the reporter's transcript from the second day of trial, which presumably contains the trial court's oral ruling, along with any other evidence that may have been introduced during that hearing.

## DISCUSSION

On appeal, Blakes raises arguments identical to those raised in his trial brief, with the exception of the argument that Elder's third cause of action was not supported by the evidence, which he does not raise in the instant appeal. As discussed below, Blakes did not preserve his objection to Elder's nonjoinder of the LLC as a defendant (see Code Civ. Proc., § 430.80; *Cline v. Haines* (1961) 192 Cal.App.2d 560, 563-564 (*Cline*)), and he has not supplied an adequate record on appeal, thereby precluding us from conducting a proper review of his remaining contentions. (See *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 (*Osgood*).) Accordingly, we affirm the trial court's judgment.

### 1. Nonjoinder of the LLC as a Defendant

Blakes first contends the trial court erred in entering judgment in Elder's favor because Elder failed to name the LLC as a defendant. Blakes argues the LLC is an indispensible party to Elder's claims that are premised on an alter-ego theory of liability because the LLC is the named debtor in the note. According to Blakes, the trial court should not have proceeded to trial without the LLC named as a defendant.

"If the party against whom a complaint or cross-complaint has been filed fails to object to the pleading, either by demurrer or answer, that party is deemed to have waived the objection unless it is an objection that the court has no jurisdiction of the subject of the cause of action alleged in the pleading or an objection that the pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.80, subd. (a).) Unless an objection to the nonjoinder of an indispensable party is raised by demurrer or answer, that objection cannot later be raised on appeal. (*Cline*, *supra*, 192 Cal.App.2d at pp. 563-564; see also *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 693 [failure to join an indispensable party is not a jurisdictional defect in the "fundamental sense," as "the court still has the power to render a decision as to the parties before it"].) Although Blakes raised the issue of the LLC's nonjoinder through his trial brief, which was filed only several days before the commencement of trial, he never raised the objection by demurrer or through his answer. Accordingly, he failed to

6

preserve that objection on appeal.  (See Code Civ. Proc., § 430.80, subd. (a); see also *Cline*, *supra*, 192 Cal.App.2d at pp. 563-564.)

In any event, even if we assume Blakes did preserve the objection for appeal, he has not supplied an adequate record upon which we can review the objection.  ""''"A judgment or order of the [trial] court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . ." [Citation.]'  [Citation.]"  (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435; italics in original.)  It is the appellant's affirmative duty to demonstrate error on appeal by reference to an adequate record.  (*Ibid*.)  "[A] record is inadequate . . . if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed."  (*Ibid*.)

As noted, Blakes raised his objection to the LLC's nonjoinder through his trial brief.  He continued to raise the issue through his questioning of Elder during the first day of trial.  In response to Blakes's questioning of Elder, the court observed that, depending on the state of the evidence at the conclusion of trial, Blakes could be held personally liable for the amount of outstanding principal owed to Elder, regardless of the LLC's status as a defendant, on the basis of Blakes's personal assurances made to Elder.  The trial court, however, did not rule on the issue of the LLC's nonjoinder during the first day of trial.  Presumably, the trial court ruled on the issue when it rendered its oral verdict on the second day of trial.  The reporter's transcript for the second day of trial, however, is not before us on appeal.  As a result, we are unable to determine whether the trial court ruled on Blakes's objection to the nonjoinder of the LLC, or if, as the court suggested it may find during the first day of trial, it found that Blakes was personally liable for Elder's outstanding debt independent of Elder's alter-ego theory of liability.  Accordingly, we presume the trial court did not err in entering judgment against Blakes notwithstanding the nonjoinder of the LLC as a defendant.  (See *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

7

## 2. *The One-Action Rule*

Blakes next contends Elder's entire lawsuit is barred by the one-action rule. Blakes argues Elder was precluded from filing suit on the underlying promissory note because the note was secured by an interest in real property. According to Blakes, Elder should have tried to foreclose on the property instead of initiating the instant lawsuit.

Under the one-action rule, where a creditor's debt is secured by an interest in real property, the creditor must foreclose on the security interest, and he may not bring an independent cause of action on the underlying promissory note. (*Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 140.) However, the one-action rule does not preclude a creditor from suing on the underlying promissory note where "foreclosure would be an idle act because the security has been destroyed or has become worthless . . . ." (*Ibid.*)

Because Blakes has not supplied an adequate record, we are unable to determine whether the one-action rule should have applied to preclude Elder from suing Blakes on the underlying promissory note. First, there is no evidence in the portions of the record before us that a deed of trust or other security instrument was executed in favor of Elder at the time the promissory note was executed. Accordingly, we presume the trial court properly found the one-action rule did not bar Elder's action because there is no evidence that the promissory note was ever secured. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 12235 [Generally, a promissory note will be accompanied by a security instrument, such as a deed of trust, which secures the promissory note by entitling the creditor to reach some asset if the debtor of the note is not paid]; see also *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

Second, even if we assume a security instrument was executed along with the promissory note, Elder testified that, unbeknownst to him at the time he signed the promissory note, the property supposedly securing the note had entered foreclosure prior to the execution of the note and was subsequently sold through foreclosure during the repayment period under the note. Indeed, during trial, the court admonished Blakes that, based on this evidence, the one-action rule likely did not preclude Elder's lawsuit because

8

Elder could not have recovered through the note's security interests if those interests had in fact been foreclosed upon. However, we do not have before us the reporter's transcript presumably containing the trial court's ruling on this issue and other potential evidence addressing the status of the interest securing the note. Accordingly, Blakes has not satisfied his burden on appeal, and we presume the trial court did not error in allowing Elder's action to proceed. (See *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

### 3. *The LLC as Blakes's Alter-Ego*

Blakes next contends Elder should not have been able to recover on his claims for breach of a promissory note and money lent because the terms of the promissory note contradict the allegations in Elder's FAC. Specifically, Blakes argues the promissory note obligates the LLC to repay Elder's outstanding debt, while the FAC alleges that Blakes is personally liable for the debt. According to Blakes, the express terms of the promissory note absolutely govern the determination of who should be held liable for Elder's outstanding debt. Blakes's argument misses the mark.

As the FAC alleges, Elder's claims for breach of a promissory note and money lent are premised on Blakes's alleged establishment of the LLC as a shell company. Accordingly, Elder sought recovery from Blakes personally on an alter-ego theory of liability, through which Blakes could be held personally liable for the obligations of the LLC in the event the trial court found the LLC was merely Blakes's alter ego.

The determination of whether the existence of a business entity should be disregarded on the basis that the entity serves as an individual's alter ego is a question of fact for the trial court, and such a determination will not be disturbed if supported by substantial evidence. (*Arnold v. Browne* (1972) 27 Cal.App.3d 386, 394 (*Arnold*), overruled on other grounds in *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124.) The two basic requirements for disregarding the existence of a business entity and finding an individual owner personally liable for the entity's obligations are: "(1) that there is such a unity of interest and ownership that the separate personalities of the [entity] and the individual no longer exist and (2) that, if the acts are treated as those of the [entity] alone, an inequitable result will follow." (*Wells Fargo Bank, National Association v.*

9

*Weinberg* (2014) 227 Cal.App.4th 1, 5.) The trial court may consider a number of factors in determining whether a business entity serves as an individual's alter ego, including whether the individual held himself out to be personally liable for the debts of the business. (*Arnold*, *supra*, 27 Cal.App.3d at pp. 394-395.)

We are unable to conclude the trial court erred in finding Blakes personally liable under the promissory note because we do not have before us an adequate record of the trial court's proceedings. As noted, whether a business entity is an individual's alter ego is a factual determination to be made by the trial court. (*Arnold*, *supra*, 27 Cal.App.3d at p. 394.) Elder presented evidence that Blakes had held himself out to be personally liable for the LLC's obligation under the promissory note, a factor that the court may have considered in finding the LLC was Blakes's alter ego. However, we are unable to review the portion of the record presumably containing the trial court's ruling on the basis of Blakes's liability under the promissory note. Likewise, we do not have before us any evidence presented on the second day of trial that may have addressed this issue. Accordingly, Blakes has not satisfied his burden on appeal, and we presume the trial court did not err in finding Blakes personally liable under the promissory note. (See *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

### 4. The Statute of Frauds

Finally, Blakes contends he could not be held liable for breach of an oral guaranty because such an agreement is barred by the statute of frauds. Blakes takes issue with the trial court's finding that he was liable under the FAC's fourth cause of action, in which Elder alleged Blakes made an oral promise to Pool that he would personally satisfy the LLC's obligation to Elder under the promissory note. Blakes argues such an oral promise is unenforceable under the statute of frauds because it constitutes a promise to answer for the debt of another, which must be evidenced by a writing signed by the party against whom enforcement of the promise is sought. (See Civ. Code, § 1624, subd. (a)(2).)

Again, due to the incomplete condition of the record supplied by Blakes, we are unable to determine whether the trial court erred in finding Blakes liable for breach of an oral guaranty. Although the portions of the record before us do not contain evidence of a

10

writing signed by Blakes memorializing an oral promise made to Elder, Elder did testify that, on numerous occasions, Blakes assured Elder that he would personally repay Elder's outstanding principal investment. However, Blakes has not supplied the reporter's transcript from the second day of trial, at which additional evidence was introduced, including Blakes's cross-examination, and the trial court's final ruling was issued. As a result, we are unable to determine whether there was no factual support for the trial court's finding that Blakes was liable for breach of an oral guaranty. Because Blakes has not satisfied his burden on appeal to demonstrate that the trial court erred, we presume the court's finding that Blakes breached his oral guaranty made to Elder was correct. (See *Osgood*, *supra*, 127 Cal.App.4th at p. 435.)

## DISPOSITION

The judgment is affirmed. Elder is awarded his costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                        **FEUER, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11